# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

LADORA CHANTELL SNELL,

Defendant-Appellant.

UNPUBLISHED
August 20, 2015

No. 319856
Genesee Circuit Court
LC No. 12-031984-FC

Before: WILDER, P.J., and OWENS and M. J. KELLY, JJ.

PER CURIAM.

A jury convicted defendant of second-degree murder, MCL 750.317. The trial court sentenced her to a prison term of 180 to 360 months. Defendant appeals as of right. We affirm.

I

Defendant's conviction arises from the death of her former boyfriend, Mack Parrish IV, who was also the father of defendant's child. Defendant and Parrish started dating in 2007, moved in together in February 2008, had a child in December 2008, and lived together until late 2011, when Parrish moved out and the two ceased intimate relations. Defendant was four years older than Parrish, who was 23 years old at the time of his death, and she was approximately two or three inches taller and heavier than Parrish, who was 5'4" and weighed approximately 150 pounds. Several witnesses, including defendant, testified that the parties had a tumultuous relationship that included arguing and physical altercations. Defendant's sister, Christie Snell, had observed the couple "fist-fighting [and] rolling around in [defendant's] apartment." Christie had observed Parrish hit defendant on more than five occasions, and observed defendant with injuries, including a swollen lip and jaw, and a bump on the forehead. She further testified that Parrish was always the aggressor, although defendant fought back.

On September 29, 2012, Parrish was drunk and belligerent at his mother's townhouse in Flint, Michigan, where he was living at the time. His behavior caused his mother, April Warren, and her boyfriend, Carlos Gill, to exit the home and go to Warren's car, where they smoked marijuana. Shortly thereafter, defendant arrived, approached Warren's vehicle, spoke with Warren and Gill, and joined them in smoking. According to defendant, Parrish exited the

-1-

townhouse and approached the vehicle, where he began to argue with Gill. Upon noticing defendant, Parrish yelled and swore at her, indicating that she was not welcome there.[1] Defendant responded that she had heard that there might be fighting going on at Parrish's home, and she came over because she thought she might need to pick up their child, whom she had placed in Parrish's care earlier that day.

Parrish and defendant continued to argue, and Warren told defendant not to go inside. Ultimately, defendant entered the townhouse, wherein defendant swung at Parrish, but missed. Parrish then grabbed defendant by the neck and shoved her face into the door. During this tussle, Parrish told defendant that he had wanted to beat her for six months and that he should kill her. Once Parrish released defendant, she ran outside and locked herself in her truck. She claimed that she did not leave the area immediately because her cell phone battery was dead, and she wanted to charge her phone to call the police so that she could return to the home to retrieve her child. After a few moments, Parrish exited the townhouse, still visibly intoxicated and stumbling, resumed yelling and swearing at defendant, and began pounding on the windows and pulling on the door handles of the truck.

As described by witnesses, Parrish began looking at the ground in his immediate vicinity, apparently looking for a rock or other implement with which to break defendant's window. After giving up, Parrish jumped up at a tree branch near him and tried to break it off, though he was ultimately unsuccessful. Defendant remained seated in her car, although she had ample opportunity to drive away while Parrish was searching for an implement because he was not blocking her vehicle in any way. When Parrish gave up trying to break a branch off the tree, he returned to the driver's side of defendant's car and began "saying something through the window." Defendant testified that she then started her car and intended to move it to a different spot where she could call the police in peace. However, Parrish was constantly running in front of her car to prevent her from moving. When defendant put her car in drive, Parrish ran to the front of her vehicle, and defendant ran Parrish over. Defendant claimed that she thought she had placed her car in reverse when she struck Parrish.

Witnesses to the confrontation contradicted defendant's explanation, testifying that defendant first put the vehicle into reverse and then accelerated quickly after putting the vehicle into drive, hitting Parrish when she reversed and running him over when she accelerated forward. Further, witnesses testified that after defendant hit and ran over Parrish, defendant got out of her vehicle, stood over Parrish while he was on the ground, swore at him, and exclaimed that she had warned him that she would kill him if he "put [his] hands" on her again. Defendant denied making those statements and testified that she accidentally struck Parrish as she was attempting to leave.

Before trial, the prosecutor filed a notice of intent to present other acts evidence that defendant had previously stabbed an intoxicated individual named Danny Pitts with deadly force, not in self-defense, causing a life-threatening injury. The prosecutor asserted that the evidence

---

[1] The witnesses provided conflicting testimony regarding whether Parrish exited the residence and whether defendant's altercation with Parrish occurred inside or outside the townhouse.

would prove the absence of self defense, absence of mistake, modus operandi, and scheme, plan, and knowledge. On the first day of trial, the prosecutor requested that defendant disclose her theory of defense. The following exchange occurred:

> [*Prosecutor*]: I want to talk about pinning Defendant to her theory. If a theory of defense is going to be self-defense, then there's no question that she is allowed to get into the history of the vic—and bring out character traits, alleged character traits of the victim . . . , and if she doesn't assert self-defense, she can't do that. So, I'm asking the Court to inquire of counsel, the Defense Counsel, are you going to be asserting self-defense? Are . . . and if so, are you intending on adducing evidence of the victim's alleged character trait for aggression.

> [*Defense Counsel*]: Judge, I don't know—I don't think I'm required at this time to dis—divulge my defense whatsoever. I don't think there's any court rule which requires—other than an alibi notice, there's nothing that makes me—forces me to tell him what my defense is going to be.

> [*Prosecutor*]: All I can say is this then, Judge, if counsel is—if counsel gets into a character trait of the Defendant for aggression, whether that is evidence of what took place the day of the killing . . . or some other day, it will be the position of the People that he had opened the door. That he is going to be—he's doing that to get the jury thinking about self-defense, and then, the People will be adducing evidence of the Defendant's character traits for aggressive, under 404(a), which I put in my quick reference memo.

> THE COURT: Okay. We're all on notice then.

During trial, defendant introduced evidence regarding Parrish's aggressive character. Also, through defendant and her sister, the prosecutor introduced evidence that defendant put a rock or a can in a sock and hit defendant's friend. There was also testimony, by Danny Pitts and Warren, that defendant threw a bottle at Pitts, causing a serious cut on his arm. During her testimony, defendant testified that Pitts grabbed her breast, she pushed Pitts, and a bottle fell; she denied throwing a bottle or cutting Pitts. Finally, the prosecution presented the testimony of Parrish's former girlfriend, Shantel Allen, who testified that defendant called and threatened her in 2008.

Also during trial, a police officer testified that defendant pleaded guilty to attempting to provide false information to the police, which arose out of a conflict between defendant and her sister, during which defendant called 911 and gave false information to "get the police there." There was also evidence presented at trial that a child named Charlotte, who is Warren's niece, called 911. Charlotte was listed as a prosecution witness, but the record does not indicate why she did not testify. During the prosecutor's cross-examination of defendant, he stated that "the little liar," i.e., Charlotte, heard defendant say, "[Y]ou're lucky I didn't have my gun," and asked if defendant made that statement. Defendant denied making the statement, and no further reference was made during cross-examination to what Charlotte allegedly heard defendant say. During his closing argument, the prosecutor referenced the remark that Charlotte allegedly heard

defendant make. Regarding the other acts evidence introduced during the trial, the trial court instructed the jury as follows:

> You've heard evidence that was introduced to show that [defendant] committed a crime, or crimes or improper acts for which she is not on trial. And like I said, if you believe it, you have to be real careful how to use it. And in this case you may only think about whether that evidence tends to show that she had a reason to commit this crime, and that she acted purposefully. That means not by accident or mistake, or because she misjudged the situation. And you must not consider this evidence for any other purpose. You don't use that evidence to decide that it shows that she's a bad person. You don't use the evidence to decide that she's guilty of other bad conduct.

After deliberations, the jury found defendant guilty of second-degree murder.

II

Defendant first argues that the trial court erred by denying her request to instruct the jury on self-defense. We disagree.

Although this Court reviews questions of law pertaining to jury instructions de novo, a trial court's decision regarding whether an instruction is applicable to the facts of the case is reviewed for an abuse of discretion. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v Armstrong*, 305 Mich App 230, 239; 851 NW2d 856 (2014).

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *Id*. (quotation marks and citation omitted). "The jury instructions must include all the elements of the crime charged, and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *Id*. at 240 (quotation marks and citation omitted). "A defendant asserting an affirmative defense must produce some evidence on all elements of the defense before the trial court is required to instruct the jury regarding the affirmative defense." *People v Guajardo*, 300 Mich App 26, 34-35; 832 NW2d 409 (2013) (quotation marks, citation, and footnote omitted). A successful claim of self-defense "requires a finding that the defendant acted intentionally, but that the circumstances justified [her] actions." *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010) (quotation marks and citation omitted). "[A]n act committed in self-defense but with excessive force . . . does not meet the elements of lawful self-defense." *People v Heflin*, 434 Mich 482, 509; 456 NW2d 10 (1990). The use of deadly force in self-defense is justified if: (1) the defendant honestly and reasonably believed that she was in danger, (2) the danger which the defendant feared was serious bodily harm or death, and (3) the action taken by the defendant appeared at the time to be immediately necessary, i.e., the defendant is only entitled to use the amount of force necessary to defend herself. MCL 780.972(1)(a); *Heflin*, 434 Mich at 502-503. The defendant has "the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist." *Dupree*, 486 Mich at 709-710.

-4-

In this case, the evidence did not support a self-defense instruction. Defendant did not claim at trial that she intentionally hit and ran over Parrish with her vehicle in self-defense. Rather, defendant consistently testified that it "was an accident." Defendant testified that she thought she put her gear shift in reverse, but, when she accelerated, her vehicle went forward and she struck Parrish. Based on the prosecution's evidence and defendant's testimony, there were only two possible outcomes supported by the evidence: (1) that defendant intentionally hit Parrish without justification, as the prosecution argued, or (2) that defendant accidentally hit Parrish as she claimed during her testimony. See *Guajardo*, 300 Mich App at 44. Where a defendant contends that the victim was injured accidentally, she is not entitled to an instruction on self-defense. See *People v Trammell*, 70 Mich App 351, 355; 247 NW2d 311 (1976); cf. *People v Droste*, 160 Mich 66, 80; 125 NW 87 (1910).

Defendant also argues that the trial court's failure to instruct on self-defense violated her constitutional right to present a defense. Although a defendant has a constitutional right to present a defense, US Const, Am VI; Const 1963, art 1, § 20; *People v Unger*, 278 Mich App 210, 249; 749 NW2d 272 (2008), the right is not absolute, and she must still comply with procedural and evidentiary rules established to assure fairness and reliability in the verdict, see *People v Hayes*, 421 Mich 271, 279; 364 NW2d 635 (1984); *People v Arenda*, 416 Mich 1, 8; 330 NW2d 814 (1982). In this case, the evidence did not support an instruction under established rules of evidence and procedure. Accordingly, there was no due process violation.

III

Defendant next argues that a new trial is required because the trial court erred when it allowed the jury to consider evidence of her prior bad acts, which defendant maintains was admissible only to rebut a possible claim of self-defense, an issue that was never presented to the jury. We disagree.

We review a trial court's decision to admit evidence for an abuse of discretion. *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010). If there is an underlying question of law, such as whether admissibility is precluded by a rule of evidence, that question is reviewed de novo. *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003).

A

Contrary to defendant's argument, her prior conviction for attempting to provide false information to the police was not offered or admitted under MRE 404(b). Rather, it was offered and admitted as impeachment evidence under MRE 609. The fact that evidence is inadmissible for one purpose does not preclude its admission for another purpose. See MRE 105. A prior conviction may be used to impeach a witness's credibility if the conviction satisfies the criteria set forth in MRE 609. *People v Cross*, 202 Mich App 138, 146; 508 NW2d 144 (1993). Defendant's prior conviction for attempting to provide false information to the police was admissible under MRE 609(a)(1), which permits introduction of a prior conviction to impeach a witness's credibility where "the crime contained an element of dishonesty or false statement." Therefore, the trial court did not abuse its discretion in admitting evidence of defendant's prior conviction.

We also reject defendant's argument that the evidence of her other prior bad acts was inadmissible under MRE 404(b). "At its essence, MRE 404(b) is a rule of inclusion, allowing relevant other acts evidence as long as it is not being admitted solely to demonstrate criminal propensity." *People v Martzke*, 251 Mich App 282, 289; 651 NW2d 490 (2002); see also *People v Mardlin*, 487 Mich 609, 616; 790 NW2d 607 (2010) ("[T]he rule is not exclusionary, but is inclusionary, because it provides a nonexhaustive list of reasons to properly admit evidence that may nonetheless also give rise to an inference about the defendant's character."). Although MRE 404(b)(1) prohibits "[e]vidence of other crimes, wrongs, or acts" to prove a defendant's character or propensity to commit the charged crime, it permits such evidence for other purposes, "such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material." See *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004). Other acts evidence is admissible under MRE 404(b)(1) if it is (1) offered for a proper purpose, i.e., one other than to prove the defendant's character or propensity to commit the crime, (2) it is relevant to an issue or fact of consequence at trial, and (3) it is sufficiently probative to outweigh the danger of unfair prejudice, pursuant to MRE 403. *People v Starr*, 457 Mich 490, 496-497; 577 NW2d 673 (1998); *People v VanderVliet*, 444 Mich 52, 55, 63-64, 74-75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). "Evidence relevant to a noncharacter purpose is admissible under MRE 404(b) even if it also reflects on a defendant's character." *Mardlin*, 487 Mich at 615 (emphasis omitted); see also *id*. at 615-616 ("Evidence is *inadmissible* under this rule *only* if it is relevant *solely* to the defendant's character or criminal propensity.").

The challenged evidence was relevant to disputed factual issues in this case and was not offered to show defendant's bad character. "A trial court admits relevant evidence to provide the trier of fact with as much useful information as possible." *People v Cameron*, 291 Mich App 599, 612; 806 NW2d 371 (2011). The evidence that defendant previously attacked other people was logically relevant to show how defendant reacted to antagonistic situations. The evidence was probative of the prosecution's theory that defendant did not accidentally hit Parrish with her car, but rather purposefully struck Parrish with the intent to harm him. Therefore, the evidence was admissible to show absence of mistake or accident and, in turn, probative of defendant's intent to kill or cause great bodily harm. Accordingly, the evidence was admissible for proper, noncharacter purposes.

Further, we are not persuaded that the evidence should have been excluded under MRE 403 on the basis that its probative value was substantially outweighed by the danger of unfair prejudice. MRE 403 is not intended to exclude "damaging" evidence, because any relevant evidence will be damaging to some extent. *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). Instead, under the balancing test of MRE 403, a court must first decide whether the evidence is unfairly prejudicial, and then " 'weigh the probativeness or relevance of the evidence' against the unfair prejudice" to determine whether any prejudicial effect substantially outweighs the probative value of the evidence. *Cameron*, 291 Mich App at 610 (citation omitted). Unfair prejudice exists where there is "a danger that marginally probative evidence will be given undue or pre-emptive weight by the jury," or "it would be inequitable to allow the proponent of the evidence to use it." *Mills*, 450 Mich at 75-76 (quotation marks and citation omitted); see also *People v McGuffey*, 251 Mich App 155, 163; 649 NW2d 801 (2002).

In the second situation, the unfair prejudice language "refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *Cameron*, 291 Mich App 611 (quotation marks and citation omitted).

The probative value of the evidence was not outweighed by the danger of unfair prejudice. Defendant has not shown a likelihood that the jury was incapable of rationally weighing the evidence. Moreover, in its final instructions, the trial court gave a cautionary instruction explaining the limited purpose of the evidence, which limited the potential for any prejudice. Juries are presumed to follow their instructions. *People v Breidenbach*, 489 Mich 1, 13; 798 NW2d 738 (2011). Accordingly, there was no error in allowing the challenged other acts evidence.

IV

Defendant lastly argues that she is entitled to a new trial because the prosecutor impermissibly argued facts not in evidence. We disagree.

Because defendant did not object to the prosecutor's comment, we review this unpreserved claim of prosecutorial error[2] for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). This Court will not reverse if the alleged prejudicial effect of the prosecutor's conduct could have been cured by a timely instruction. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001).

A prosecutor may not make a statement of fact to the jury that is unsupported by the evidence. *People v Stanaway*, 446 Mich 643, 686; 521 NW2d 557 (1994). The prosecution concedes, and we agree, that there was no evidence to support the prosecutor's remark that a non-witness saw defendant stand over Parrish and state, "You're lucky I didn't have my gun." Thus, defendant has established plain error. To be entitled to relief, however, defendant must also establish that her substantial rights were affected. *Carines*, 460 Mich at 752-753, 763-764. Defendant bears the burden of showing actual prejudice, *People v Pipes,* 475 Mich 267, 274; 715 NW2d 290 (2006), and reversal is warranted only when an "error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence," *Carines*, 460 Mich at 752-753, 763-764 (quotation marks and citation omitted).

There is no reasonable likelihood that the prosecutor's improper statement resulted in defendant's conviction. On redirect examination of defendant, defense counsel elicited that defendant did not own a gun. With regard to defendant's behavior after she struck Parrish,

---

[2] Though defendant phrases her claim as one of "prosecutorial misconduct," this Court recently noted that in most instances the term "misconduct" is a misnomer. *People v Cooper*, 309 Mich App 74, ___; ___ NW2d ___ (2015); slip op at 7-8. Therefore, we will refer to defendant's claim as one regarding prosecutorial errors, reserving the term "prosecutorial misconduct" only for cases involving egregious conduct on the part of a prosecutor. *Id*.

defendant acknowledged that she got out of her car and bent over Parrish, and two witnesses testified that they heard defendant swear at Parrish and yell that she had warned Parrish she would kill him if he put his hands on her. These remarks, made toward an incapacitated Parrish, were at least as damaging as the statement incorrectly attributed to her. Further, a timely objection to the improper remark could have cured any prejudice by obtaining an appropriate cautionary instruction. See *Watson*, 245 Mich App at 586. Indeed, even though defendant did not object, the trial court instructed the jury that the lawyers' statements and arguments are not evidence, that the jury was to decide the case based only on the properly admitted evidence, and that the jury was to follow the court's instructions. These instructions were sufficient to dispel any possible prejudice. *People v Long*, 246 Mich App 582, 588; 633 NW2d 843 (2001). As previously observed, juries are presumed to follow their instructions. *Breidenbach*, 489 Mich at 13. Consequently, this unpreserved claim of error does not warrant reversal.

Affirmed.

/s/ Kurtis T. Wilder
/s/ Donald S. Owens
/s/ Michael J. Kelly