PEOPLE v MARTZKE

Docket No. 236836. Submitted January 9, 2002, at Lansing. Decided March
29, 2002. Approved for publication May 10, 2002, at 9:20 A.M.

Diane K. Martzke, charged in the Eaton Circuit Court with first-degree
child abuse in connection with injuries sustained by an infant
placed in Martzke's day care, made a pretrial motion in limine to
preclude the prosecution from introducing evidence of suspicious
bruises on other children at the defendant's day care. The court,
Calvin E. Osterhaven, J., granted the motion, ruling that the evi-
dence in question was inadmissible under MRE 404(b). The Court
of Appeals, McDONALD and GRIFFIN, JJ. (METER, P.J., dissenting),
denied the prosecution's application for leave to appeal in an
unpublished order entered June 18, 2001 (Docket No. 234133). The
Supreme Court, in lieu of granting leave, remanded the matter to
the Court of Appeals for consideration as on leave granted. 465
Mich 877 (2001).

The Court of Appeals held:

MRE 404(b) bars the admission of evidence of other crimes,
wrongs, or acts where the evidence is offered to prove the charac-
ter of a person in order to show action in conformity therewith, but
not where the evidence is offered for other purposes (such as to
prove intent, absence of mistake, or witness bias), the evidence is
relevant, and the probative value of the evidence is not substan-
tially outweighed by the danger of unfair prejudice. Upon request, a
trial court admitting such evidence may provide a limiting instruc-
tion advising the jury to limit its consideration of the evidence to
the purpose for which the evidence was admitted.

In this case, given that the record remains underdeveloped with
respect to whether the other acts evidence is properly admissible
as proof of intent, absence of mistake, or witness bias, the trial
court improvidently granted the defendant's motion in limine.

Reversed and remanded for further proceedings.

EVIDENCE — OTHER ACTS — ADMISSIBILITY.

Other acts evidence may be admitted if it is offered for a proper pur-
pose under MRE 404(b), it is relevant under MRE 402 as enforced
through MRE 104(b), and its probative value is not substantially

outweighed by unfair prejudice; upon request, a trial court may provide a limiting instruction.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *Jeffrey L. Sauter*, Prosecuting Attorney, and *William M. Worden*, Senior Assistant Prosecuting Attorney, for the people.

*Ronald A. Zawacki*, for the defendant.

Before: FITZGERALD, P.J., and BANDSTRA and K. F. KELLY, JJ.

PER CURIAM. The prosecution appeals as on leave granted by order of our Supreme Court in *People v Martzke*, 465 Mich 877 (2001). Defendant, a day-care provider, was charged with child abuse in the first degree, MCL 750.136b(2). The prosecution sought to introduce evidence of suspicious injuries that appeared on two other infants and one toddler while in defendant's care. In response, defendant filed a motion to suppress the evidence on the ground that such evidence was impermissible character evidence precluded by MRE 404(b). The trial court granted defendant's motion. The prosecutor then filed an interlocutory appeal with this Court, and this Court denied leave. Our Supreme Court, however, in lieu of granting leave to appeal, remanded to this Court for consideration as on leave granted. We now reverse and remand for further development of the record.

I. BASIC FACTS AND PROCEDURAL HISTORY

At the time that this case arose, the victim was fourteen weeks old. The victim's parents began using defendant as their day-care provider on August 21, 2000. Approximately one month later, on September

28, 2000, the victim's mother dropped her daughter off at defendant's day care. According to testimony at the preliminary hearing, the victim appeared to be well that morning. That afternoon, defendant phoned the victim's mother indicating that the victim was "lethargic," her eyes were "rolling back," and her breathing was labored. The victim's mother called her husband, the victim's father, and he proceeded to defendant's home.[1] When he arrived, he observed the victim lying on the floor alone. He testified that she appeared limp; dead. Defendant's husband approached the victim and when he attempted to pick her up off the floor, he grabbed her around the waist and the victim screamed. About this same time, paramedics arrived and transported the victim to the hospital.

Dr. Steven Guertin treated the victim when she arrived at the hospital. At the preliminary hearing, he testified that when presented to the hospital, she was "lethargic" and had tiny hemorrhages below her left eye. During his examination, Dr. Guertin discovered that the victim had hemorrhages round both sides of her brain that were two weeks to one month old. In addition, there was hemorrhaging in the back of the brain, which injury was greater than three days old, but less than one week old. Because of the injuries, doctors did a bone survey and a bone scan and discovered that the victim had three fractured ribs on the back left side. All the victim's injuries coincided with the time that she was in defendant's day care. In other words, none of the older injuries predated the victim's day-care experience. Ultimately, Dr. Guertin testified that the victim's injuries were consistent with

---

[1] Defendant and her husband provided day-care services in their home.

child abuse and that the victim's presenting injury occurred on September 28.

Testimony during the preliminary examination established that the victim was the mother and father's first child. The victim's mother would drop her off at day care and her father would pick her up, bring her home, and wait for the mother to return from work. The evidence adduced during the preliminary examination demonstrated that the victim's father was alone with her for about an hour and forty-five minutes before the victim's mother returned from work. The defense elicited testimony indicating that the victim's father experienced difficulty adjusting to fatherhood and that he often called the mother at work to complain about the victim. Furthermore, the defense also established that approximately one week before the September 28 incident, the victim went limp while her father was feeding her.

On the basis of the proofs presented during the preliminary examination, the judge found that the infant was the victim of child abuse and that there was probable cause to believe that the crime of first-degree child abuse occurred and that defendant committed the offense. Accordingly, the court bound defendant over to the circuit court on that charge.[2] Defendant's attorney executed a waiver of arraignment form that indicated that defendant stood mute to the charges levied against her.

---

[2] A review of the record also reveals that defendant was charged with child abuse in the fourth degree in a second count involving another child in defendant's charge. Defendant made a motion to sever those charges, and the trial court granted the motion. Consequently, defendant was bound over to the circuit court on the first-degree child abuse charge only.

The prosecutor sought to introduce evidence of suspicious bruises appearing on other children left within defendant's care and control. During a hearing on defendant's motion to suppress the other acts evidence pursuant to MRE 404(b), defendant maintained that she did not commit the offense. After the hearing, the trial court took the matter under advisement and issued a written opinion and order granting defendant's motion to suppress. We now determine that the trial court improvidently granted defendant's motion and reverse and remand for further development of the record.

## II. STANDARD OF REVIEW

This Court reviews evidentiary decisions for an abuse of discretion. *People v Watson*, 245 Mich App 572, 575; 629 NW2d 411 (2001). The decision whether to admit evidence lies within the trial court's sound discretion and will not be disturbed absent an abuse of that discretionary authority. *People v Crawford*, 458 Mich 376, 383; 582 NW2d 785 (1998). However, an issue concerning the proper construction of a rule of evidence presents a question of law that this Court reviews de novo. *People v Stevens*, 236 Mich App 294, 299; 599 NW2d 789 (1999), rev'd in part on other grounds 461 Mich 655; 610 NW2d 881 (2000).

## III. THE STATE OF THE CURRENT RECORD

At this stage of the proceedings, all that is available to this Court is defendant's general denial and the *potential* for defendant to attempt to shift blame for the victim's injuries onto the victim's father. A review of the existing record reveals that at this juncture,

defendant's position is that she did nothing at all to cause the victim's injuries that culminated in her hospitalization on September 28, 1999.

When a defendant pleads not guilty of the offense charged, all elements that comprise the offense are placed at issue. *Crawford, supra* at 389. For defendant to be convicted of child abuse in the first degree, the prosecutor bears the burden of establishing, beyond a reasonable doubt, that defendant "knowingly or intentionally cause[d] serious physical or serious mental harm to a child." MCL 750.136b(2). Thus, according to the letter of the applicable statute and in light of defendant's general denial, defendant's intent likely will become a material fact at issue as the case proceeds through the adversarial process, the defense solidifies its position, and the points of contention between the respective parties come into sharper focus.

However, at this juncture, it is difficult, if not impossible, to predict the course that the proofs will ultimately take for purposes of precisely identifying that which will become material as the case proceeds. At present, the only defense submitted is a general denial, i.e., defendant did not do anything to cause the victim's injuries. Implicit in this position is the underlying suggestion that someone else *is* responsible.

At this point in the proceedings, the record is simply not sufficiently developed for this Court to render a definitive conclusion concerning the ultimate admissibility of the proffered testimony. On the limited record currently available, for this Court to conclusively determine admissibility, we would have to heap surmise atop speculation to discern materiality, rele-

vance, and probative value. To engage in such conjecture would result in a decision constructed from nothing more than assumption and supposition, which would effectively result in this Court's charting the course of the trial. We are not willing, by our decision, to effect such a result.

We note our Supreme Court observed in *People v VanderVliet*, 444 Mich 52, 89-90; 508 NW2d 114 (1993):

> [N]o judge can be expected to correctly assess the evidentiary issue unless and *until the court is presented with a concrete theory of defense* that allows the court to determine relevancy. Without such a concrete presentation, a defendant's general posture . . . requires the trial judge to *assume the relevancy of other acts proffered under noncharacter theories of admissibility.*
>
> *              *              *
>
> Where pretrial procedures, including requests for offers of proof, do not furnish a record basis to reliably determine the relevance and admissibility of other acts evidence, the trial court should employ its authority to control the order of proofs, require the prosecution to present its case in chief, and delay ruling on the proffered other acts evidence until after the examination and cross-examination of prosecution witnesses. *If the court still remains uncertain of an appropriate ruling at the conclusion of the prosecutor's other proofs, it should permit the use of other acts evidence on rebuttal, or allow the prosecution to reopen its proofs after the defense rests, if it is persuaded in light of all the evidence presented at trial, that the other acts evidence is necessary to allow the jury to properly understand the issues.* [Emphasis added.]

On the record presented herein, the defense's theory remains unknown. Although defendant claims that she did nothing at all to cause the victim's injury, this position, in and of itself, does not suggest what

theory the defense will present at trial as a plausible explanation for the victim's injuries. Accordingly, at this stage, we avail ourselves of the opportunity to remind the trial court of the guiding principles surrounding the use of other acts evidence generally.

### IV. MRE 404(B) JURISPRUDENCE

At its essence, MRE 404(b) is a rule of inclusion, allowing relevant other acts evidence as long as it is not being admitted solely to demonstrate criminal propensity. *VanderVliet, supra* at 74-75. With this fundamental premise at the forefront driving our consideration, we begin our discussion. In *People v Sabin (After Remand)*, 463 Mich 43, 55-56; 614 NW2d 888 (2000), our Supreme Court reaffirmed the approach to the admissibility of other acts evidence initially set forth in *VanderVliet, supra*:

> First, the prosecutor must offer the other acts evidence under something other than a character to conduct or propensity theory. MRE 404(b). Second, the evidence must be relevant under MRE 402, as enforced through MRE 104(b), to an issue of fact or consequence at trial. Third, under MRE 403, a " 'determination must be made whether the danger of undue prejudice [substantially] outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate for making decision of this kind under Rule 403.' " Finally, the trial court, upon request, may provide a limiting instruction under MRE 105. [Citation omitted.]

### A. PURPOSE OF OTHER ACTS EVIDENCE

The first inquiry is to establish for what purpose the prosecutor seeks to introduce the other acts evidence. MRE 404(b) provides in pertinent part:

> Evidence of other crimes, wrongs, or acts is *not admissible to prove the character of a person in order to show action in conformity therewith.* It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent . . . knowledge, identity, or absence of mistake or accident when the same is material . . . . [Emphasis added.]

Notably, the litany of proper purposes contained in MRE 404(b) is not a finite list. According to our Supreme Court's directive, " '[p]roperly understood, MRE 404(b) is a *nonexclusive list of examples* of situations in which the general rule excluding character evidence . . . is not offended because the evidence is probative of some fact other than the defendant's criminal propensity.' " *VanderVliet, supra* at 66 quoting *People v Engelman,* 434 Mich 204, 212; 453 NW2d 656 (1990) (emphasis added). See also *People v Watson,* 245 Mich App 572, 577; 629 NW2d 411 (2001) (stating that the list of permissible uses contained in MRE 404[b] is "not exhaustive").

Congruent with the foregoing, another proper purpose of other acts evidence not specifically included in the body of the rule itself is evidence offered to expose a witness' bias. In a very recent decision, our Supreme Court considered whether evidence of a witness' prior arrest was admissible on cross-examination by the prosecutor to establish bias. In *People v Layher,* 464 Mich 756; 631 NW2d 281 (2001), the defendant was convicted of first-degree criminal sexual conduct involving his minor niece. The defense sent Robert Granger to investigate the case in response to the victim and her aunt's request to speak with an attorney. As a result of his investigation, Granger became the lead witness for the defense. Because Granger's testimony conflicted with the vic-

tim's, the prosecution sought to introduce evidence that Granger was previously tried and acquitted on a charge of criminal sexual conduct involving a minor under thirteen years of age. See *id.* at 767.

On cross-examination, the prosecutor sought to introduce evidence of Granger's past arrest without conviction not for impeachment purposes, but rather to expose the witness' bias in his testimony and suggest that his past experience tainted how he conducted the investigation. The *Layher* Court recognized that evidence of bias is "always relevant" on cross-examination and that bias "arising from past arrest without conviction is admissible, if relevant, as long as its probative value is not substantially outweighed by the danger of unfair prejudice." *Id.* at 768. The Court further cautioned the bench and bar " 'to employ the evidentiary safeguards already present' in the Michigan Rules of Evidence in determining the admissibility of a past arrest that did not result in conviction." *Id.* at 767, 768-769 (citing *VanderVliet, supra* at 74).

By analogy, past investigations for potential child abuse that ultimately were unsubstantiated is akin to a prior arrest without an ensuing conviction. Consequently, like evidence regarding a past arrest, evidence of suspicious bruises appearing on other children left within defendant's exclusive care may come in through witnesses presented at trial not to impugn defendant's character, but rather for purposes of exposing a witness' potential bias and a motive to contort or otherwise temper the testimony rendered. Additionally, prior investigations by the state licensing agency that ultimately failed to substantiate allegations of child abuse, reduces the potential for prejudice in relation to its probative value. Thus, pro-

viding that relevance and materiality are established relative to witness bias, the unsubstantiated allegations would serve, in part, to purge the taint of prejudice that may flow from the other acts evidence. However, at this stage of the proceedings and on the current record, we cannot determine whether the other acts evidence would come in for this purpose. We merely identify it as within the realm of possibility.

Returning to the guiding principle underlying MRE 404(b), other acts evidence is not admissible, "[i]f the proponent's *only* theory of relevance is that the other act shows defendant's inclination to wrongdoing in general to prove that the defendant committed the conduct in question." *VanderVliet, supra* at 63 (emphasis added). Stated another way, if the intervening inference between the other act and the ultimate inference for which the evidence is proffered is that the defendant has a propensity to commit the charged crime, then the evidence is inadmissible. See *Crawford, supra* at 390.

In the instant case, the prosecutor seeks to introduce evidence that other children left within defendant's exclusive care also developed suspicious bruises, in part, to establish defendant's intent and absence of mistake. To be sure, evidence that other children left within defendant's exclusive care developed suspicious bruises may be relevant to whether defendant intentionally inflicted the victim's injuries or whether they resulted from accidents. Accordingly, at this juncture and on the record here before us, we cannot conclude that the purpose advanced by the prosecution for the admission of other acts evidence runs afoul of the proscriptions contained in MRE 404(b).

B. RELEVANCE

The next inquiry pertinent to determining the admissibility of other acts evidence is to determine whether the proffered evidence is relevant. *Sabin, supra* at 56. Indeed, " '[l]ogical relevance is the "touchstone" of the admissibility of uncharged misconduct evidence.' " *VanderVliet, supra at 61* (citation omitted). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401; see also *Sabin,* supra at 56. The concept of relevance is thus concerned with the relationship between the proffered evidence and a material fact at issue in the case whereby the evidence makes a material fact at issue more probable than it would be without the evidence. *Crawford, supra* at 387. Of critical importance to this analysis is whether the proffered evidence helps prove a material fact at issue. By definition, "[i]f the evidence is offered to help prove a proposition which is not a matter in issue, the evidence is immaterial," *Crawford, supra* at 389.

In the case at bar, defendant denied committing the alleged offense. As we have repeatedly stated, when a defendant pleads not guilty of the offense charged, *all* elements that comprise the offense are placed "at issue." *Id.* For defendant to be found guilty of child abuse in the first degree, the prosecutor must establish, beyond a reasonable doubt, that defendant "knowingly or intentionally cause[ed] serious physical or serious mental harm to a child." MCL 750.136b(2). Thus, according to the applicable statute and in light

of defendant's not guilty plea, defendant's intent may become a material fact "at issue" in the case sub judice. Furthermore, because defendant contends that she did nothing at all to cause the victim's injuries, intent and absence of mistake may become facts "at issue" *as the proceedings develop* and any theories advanced in defense solidify.

### C. PROBATIVE VALUE AND POTENTIAL FOR PREJUDICE

After assessing materiality and relevance, the third step in the analysis is to determine whether the potential for prejudice flowing from the evidence substantially outweighs its probative value. *Watson, supra* at 577. In accord with MRE 403, evidence, although relevant, may nevertheless be excluded if the potential for prejudice substantially outweighs its probative value. *Id.* The danger associated with other bad acts evidence is "the fear that the jury will convict the defendant inferentially on the basis of [her] character rather than because [she] is guilty beyond a reasonable doubt of the crime charged." *Crawford, supra* at 384. The prosecutor must "weave a logical thread linking the prior act to the ultimate inference," *id.* at 390, "demonstrating that the [prior bad acts] [establish] some intermediate inference, other than the improper inference of character, which in turn is probative of the ultimate issues in [the] case," *id.* at 391.

In the case at bar, the prosecutor proffers the other acts evidence, in part, to establish defendant's intent and absence of mistake. Thus, the intermediate inference between the other acts evidence and the ultimate inference that defendant committed the crime charged is something other than defendant's wretched

character. Therefore, the question becomes whether the potential for the jury to convict on an impermissible inference that defendant acted in conformity with a flaw in her general character substantially outweighs its probative value in this regard.

### D. A LIMITING INSTRUCTION

If the trial court ultimately determines that the probative value of the proffered evidence substantially outweighs its potential for prejudice, defendant is entitled to a carefully crafted limiting instruction advising the jurors that they are to consider the other acts evidence only as indicative of the reasons for which the evidence is proffered to cushion any prejudicial effect flowing from the evidence. See *People v Knapp*, 244 Mich App 361, 379; 624 NW2d 227 (2001) (recognizing that upon request, the trial court may provide a limiting instruction to the jury). A carefully constructed limiting instruction rendered by the trial court would be sufficient to counterbalance any potential for prejudice spawned by the other acts evidence.

In conclusion, and considering the underdeveloped state of the record at this point in time, we believe that the flexible approach advanced in *VanderVliet* is the more sagacious approach to follow in the instant case. See *VanderVliet, supra* at 90. Consequently, we find that the trial court improvidently granted defendant's motion. We therefore reverse the trial court's decision granting defendant's motion to suppress the other acts evidence and further direct the trial court on remand to *"assume the relevancy* of other acts proffered under *noncharacter theories* of admissibility," *id.* at 89 (emphasis added). Further, we remand

to provide the trial court with the opportunity to exercise its authority as the trial progresses to "control the order of proofs" and thus delay its ultimate ruling until after examination and cross-examination of the prosecution's witnesses and the theories advanced in defense are more concrete, such that issues concerning materiality, legal relevance, probative value, and potential for prejudice may be more acutely scrutinized and admissibility properly determined. *Id.*

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.