# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
February 16, 2017

v

No. 330086
Kalamazoo Circuit Court
LC No. 2015-000668-FC

VICTOR DEVON FITZPATRICK,

Defendant-Appellant.

Before: MURPHY, P.J., and SAWYER and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals by right his convictions for two counts of first-degree criminal sexual assault (CSC), MCL 750.520b(1)(b), and two counts of second-degree CSC, MCL 750.520c(1)(b). The trial court sentenced defendant to 330 months to 50 years' imprisonment for first-degree CSC and 15 to 30 years' imprisonment for second-degree CSC. We affirm.

On April 4, 2015, defendant was out late drinking in Kalamazoo, Michigan, with his cousin Makella Potts, and her friend. At some point that night, defendant went to Makella's house with Makella to go to sleep. Makella decided to go back out and left defendant on the couch in her living room. Their aunt, Carla Potts, was spending the night at Makella's on a separate couch in the living room. The victim, defendant's 14-year-old cousin was also staying in Makella's house that night. Before defendant came back for the night, the victim watched television until 1 a.m. with Carla, and then went to bed with her nieces in a first-floor bedroom.

At some point during the night, the victim awoke to defendant rubbing his penis against her butt. The victim told defendant to stop, but he did not say anything and continued to rub against the victim for another couple of minutes. When defendant stopped, he rolled the victim onto her back, got on top of her, and took off her pants. Defendant then removed his pants and put his penis in the victim's mouth and moved it up and down. After defendant removed his penis from the victim's mouth, he put it into her vagina. Defendant then pushed the victim's bra down and began licking her breasts while his penis was still in her vagina. This continued until there was a knock on the door, at which point defendant stopped, put on his clothes, and left.

The next day, the victim told Makella what happened. The victim was eventually taken to the YWCA, where a nurse performed a physical examination. As part of the exam, the nurse collected the victim's medical history, including the reason for the victim's visit to the YWCA

-1-

that day. Over defendant's objection, the nurse testified at trial that the victim told her that while the victim was asleep, a man came behind her and rubbed his penis on her butt, then got on top of her and put his penis in her mouth, then in her vagina. The nurse testified that this continued until the man heard a knock on the door, at which point he left. After hearing the victim's story, the nurse performed a physical examination of the victim and found a ¾-inch abrasion to the victim's genital area on the posterior fourchette, which was consistent with the events that the victim described. Samples were taken from the areas that the victim told the nurse that her assailant had touched, but no saliva or semen was found in any of the samples.

Also at defendant's trial, the prosecution introduced evidence of a sexual assault from 2006 in which defendant was accused of sexually assaulting his 18-year-old stepcousin. In that instance, the victim was sleeping on a couch at Makella's apartment. Defendant came into Makella's apartment after the victim had already fallen asleep, took the victim's pants off, and put his penis into her vagina. When the victim woke up, defendant stopped. The victim quickly put her pants back on and went to Makella's room to call the police, at which point defendant fled.

On appeal, defendant first argues that the trial court erred by admitting the nurse's testimony regarding the victim's statement because it was inadmissible hearsay. We disagree. "This Court reviews a trial court's evidentiary ruling for an abuse of discretion." *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013).

Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). "If, however, the proponent of the evidence offers the statement for a purpose other than to prove the truth of the matter asserted, then the statement, by definition, is not hearsay." *People v Musser*, 494 Mich 337, 350; 835 NW2d 319 (2013). If a statement is hearsay, it "is generally prohibited and may only be admitted at trial if provided for in an exception to the hearsay rule." *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). "Statements made for the purpose of medical treatment are admissible pursuant to MRE 803(4) if they were reasonably necessary for diagnosis and treatment and if the declarant had a self-interested motivation to be truthful in order to receive proper medical care." *People v Mahone*, 294 Mich App 208, 214-215; 816 NW2d 436 (2011).

In this case, the nurse's testimony was arguably not hearsay because it was not offered to prove the truth of the victim's statement. The nurse testified that she collected information from the victim in order to address the victim's medical needs, which included understanding why the victim was visiting the nurse on that occasion. The nurse did not identify defendant by name, but rather described the events that the victim said caused her injuries. At no point did the nurse indicate that these events were true, only that the injuries she identified on the victim were consistent with the victim's description of these events. Therefore, the nurse's testimony was arguably not hearsay.

Even if the statement were hearsay, it was admissible under MRE 803(4). The nurse explained that collecting a medical history, including the reason that the patient was visiting the

nurse on a particular occasion, was a routine part of the nurse's examination process. In the victim's case, she described to the nurse a sexual assault during which a man put his penis inside her vagina, causing pain. The victim complained of continuing discomfort in her genital region. Based on the victim's statements, the nurse conducted a physical exam and was able to identify a ¾-inch abrasion to the victim's genital area. Therefore, the sexual assault that the victim described to the nurse was "reasonably necessary for diagnosis and treatment" because it determined the type of examination and course of treatment that was most appropriate. *Mahone*, 294 Mich App at 214-215. Defendant argues that the purpose of the victim's examination was to collect evidence, not for medical treatment. However, the fact that the nurse collected evidence of a sexual assault during her examination of the victim "is not dispositive." *People v Duenaz*, 306 Mich App 85, 96; 854 NW2d 531 (2014). The victim went to the nurse complaining of genital discomfort, and the nurse diagnosed an abrasion to the victim's genital area. This supports the conclusion that the victim went to the nurse for a medical diagnosis. Further, by telling the nurse the truth, the victim ensured that the nurse was able to properly address any potential medical injuries that the victim may have suffered. Therefore, she had a "self-interested motivation to be truthful in order to receive proper medical care." *Mahone*, 294 Mich App at 214-215. Accordingly, the trial court properly admitted the nurse's testimony regarding the victim's statement describing her sexual assault under MRE 803(4).

Defendant next argues that the trial court erred by admitting defendant's other-acts evidence. We disagree. Defendant did not object to the admission of the 2006 sexual assault, but rather left its admission to the discretion of the trial court. Therefore, defendant waived his right to appeal this issue, *People v Fetterley*, 229 Mich App 511, 520; 583 NW2d 199 (1998), and his waiver extinguished any error, *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). Yet, even addressing the merits of defendant's argument, his claim fails. If defendant had not waived this issue, his failure to object left the issue unpreserved. *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). "We review unpreserved evidentiary error, including alleged constitutional error, for plain error." *People v Coy*, 258 Mich App 1, 12; 669 NW2d 831 (2003).

MRE 404(b)(1) states that "evidence of other crimes, wrongs, or acts" is not admissible "to prove the character of a person in order to show action in conformity therewith," but is admissible for "purposes, such as proof of . . . scheme [or] plan." MRE 404(b)(1). To determine whether other acts evidence is admissible, courts in Michigan follow the *VanderVliet*[1] approach, which requires the following:

> First, the prosecutor must offer the "prior bad acts" evidence under something other than a character or propensity theory. Second, the evidence must be relevant under MRE 402, as enforced through MRE 104(b). Third, the probative value of the evidence must not be substantially outweighed by unfair prejudice under MRE 403. Finally, the trial court, upon request, may provide a limiting

---

[1] *People v VanderVliet*, 444 Mich 52; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).

instruction under MRE 105. [*People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004) (citation and quotation marks omitted).]

Defendant first argues that the 2006 evidence was improperly admitted because its sole purpose was to show defendant's character. This argument is without merit. "Where the only relevance of the proposed evidence is to show the defendant's character or the defendant's propensity to commit the crime, the evidence must be excluded." *Id*. However, this "rule is inclusionary, because it provides a nonexhaustive list of reasons to properly admit evidence that may nonetheless also give rise to an inference about the defendant's character." *People v Mardlin*, 487 Mich 609, 615-616; 790 NW2d 607 (2010). Here, the prosecution offered the 2006 victim's testimony of the previous incident in which defendant put his penis in the victim's vagina while she was sleeping to show a common scheme or plan on behalf of defendant to sexually assault young teenage girls. On its face, this is a proper purpose under MRE 404(b)(1).

"[E]vidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *People v Sabin (After Remand)*, 463 Mich 43, 63; 614 NW2d 888 (2000). "While there [may be] some dissimilarities between the charged acts and the other bad acts, a high degree of similarity is not required, nor are distinctive or unusual features required to be present in both the charged and the uncharged acts." *People v Steele*, 283 Mich App 472, 480; 769 NW2d 256 (2009).

Both in the current case and the 2006 assault, defendant was involved in a sexual assault of a young relative while the relative was staying as a guest at defendant's cousin's home. In both instances, defendant approached the victim while she was sleeping and removed her clothes. Although there were clear differences in the two assaults, such as the victim in the 2006 incident was on a couch and not a bedroom, and defendant stopped assaulting the 2006 victim when she woke up, the cases were sufficiently similar to establish a common scheme or plan. See *Steele*, 283 Mich App at 480.

Defendant does not contest the relevance of the evidence, but rather argues that the trial court erred in admitting evidence of the 2006 assault because it was unfairly prejudicial. Under MRE 403, relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403 "does not prohibit prejudicial evidence; only evidence that is unfairly so." *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998). This is because evidence offered against a party is "by its very nature . . . prejudicial, otherwise there would be no point in presenting it." *People v Fisher*, 449 Mich 441, 451; 537 NW2d 577 (1995). When weighing "probative value against prejudicial value," this Court balances several factors, including, among other considerations, "the potential for confusing or misleading the jury." *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).

Defendant argues that evidence of the 2006 assault unfairly bolstered the victim's testimony because it painted defendant as a bad man to the jury, tempted the jury to convict defendant of the 2006 assault rather than the assault at issue in the case, and tempted the jury to

find that defendant committed the crime in this case because he had a propensity to commit crimes. These arguments are without merit. "A carefully constructed limiting instruction rendered by the trial court would be sufficient to counterbalance any potential for prejudice spawned by the other acts evidence." *People v Martzke*, 251 Mich App 282, 295; 651 NW2d 490 (2002). Jurors are presumed to follow the trial court's instructions. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008).

The trial court's limiting instructions specifically addressed defendant's concerns. Specifically, the trial court instructed the jury that it could not use this evidence to "decide that it shows that the Defendant is a bad person," that it "must not convict the Defendant here because you think he is guilty of other bad conduct," and that the jury could use this evidence "only to consider" whether defendant had a common plan or scheme, not "that he [was] likely to commit crimes." The trial court's instructions counterbalanced any potential for prejudice that the evidence of defendant's 2006 assault may have had. See *Martzke*, 251 Mich App at 295. Accordingly, defendant failed to establish that the evidence of his 2006 sexual assault was unfairly prejudicial, and the trial court did not plainly err by admitting it.

Defendant also argues that defense counsel was ineffective at trial because he failed to object to the admission of evidence of the 2006 sexual assault. However, the trial court did not err by admitting evidence of defendant's 2006 sexual assault. As such, any objection that defense counsel could have made to its admission at trial would have been meritless. Defense counsel cannot be found ineffective "for failing to raise meritless or futile objections." *People v Putman*, 309 Mich App 240, 245; 870 NW2d 593 (2015). Accordingly, defense counsel was not ineffective.

Affirmed.

/s/ William B. Murphy
/s/ David H. Sawyer
/s/ Brock A. Swartzle