*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ALFRED MICHAEL SAARIO,

        Defendant-Appellant.

UNPUBLISHED
November 19, 2019

No. 344842
Iron Circuit Court
LC No. 16-009656-FH

Before: RONAYNE KRAUSE, P.J., and METER and GLEICHER, JJ.

PER CURIAM.

Defendant, Alfred Michael Saario, appeals by leave granted[1] his convictions by a jury of second-degree murder, MCL 750.317, and intentionally discharging a firearm in a dwelling causing death, MCL 750.234b(5). The trial court sentenced defendant to serve concurrent sentences of 25 to 40 years in prison for the second-degree murder conviction, and 7 years and 1 month to 40 years in prison for the intentional discharge of a firearm in a dwelling causing death conviction. Defendant challenges the trial court's jury instructions and his trial counsel's effectiveness. We affirm.

## I. BACKGROUND

Defendant shot and killed the victim, his adult stepdaughter, in his and his wife's home, late in the evening on June 22, 2016. Defendant and the victim disliked each other and had an extremely troubled relationship marked by calling each other derogatory names, physical altercations, and mutual avoidance whenever possible. Defendant never disputed shooting the victim; he claimed that he did so in self-defense and in defense of his wife.

---

[1] *People v Saario*, unpublished order of the Court of Appeals, entered November 10, 2018 (Docket No. 344842).

The victim struggled with an addiction to prescription pain medication, which she developed after her involvement in a severe car accident. The victim's house had no running water, but it did have electricity. The victim lived close to defendant, and she often visited to use the telephone, take showers, wash her laundry, and obtain drinking water. On the night of the shooting, defendant and his wife visited a local bar. Defendant consumed beer and two shots of liquor. The exact events that transpired after this were disputed. However, when defendant and his wife returned to their home, the victim was present, along with defendant's son and a friend of defendant's son. Defendant went to the upstairs bedroom and remained there for some time. Defendant's wife eventually went to the back porch to smoke, and the son and his friend went to the basement.

Defendant claimed that later in the evening the victim burst into his bedroom, grabbed his phone, and fled downstairs. He claimed that, because of the prior physical altercations between himself and the victim and his knowledge that she was struggling with drug addiction, he grabbed his rifle from the closet, loaded two bullets into it, and went downstairs. He claimed he feared for his and his wife's safety. Defendant further claimed that he encountered the victim in the living room, which was dark at the time. The victim made threatening remarks toward him and moved, prompting him to react by firing the rifle, striking the victim and killing her. Defendant then turned the rifle on his own head and pulled the trigger. He claimed that he had done so because he could not imagine how he would tell his wife that he had shot her daughter. He further claimed that, as he pulled the trigger, he changed his mind and moved his head slightly. Defendant survived, but he sustained severe, permanent, and readily apparent head injuries.

The jury was apparently unpersuaded by defendant's claims of self-defense and defense of his wife. He was charged with open murder, and the jury convicted him of the lesser offense of second degree murder. The jury also convicted him of intentionally discharging the firearm in the house causing the victim's death.

## II. JURY INSTRUCTIONS

Defendant first argues that the trial court erroneously instructed the jury by referring to crimes for which he was not on trial. Defendant contends that the trial court's error prejudiced him. We conclude that the trial court did not err, and even if an error occurred, it was harmless.

## A. STANDARD OF REVIEW

Defendant did not object to the jury instructions raised on appeal, leaving the issue unpreserved. *People v Sabin (On Second Remand)*, 242 Mich App 656, 657; 620 NW2d 19 (2000). We choose to give defendant the benefit of the doubt that he only failed to object, and thus merely forfeited the alleged error, and he did not waive any objections, which would entirely preclude appellate review. See *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000). As an unpreserved issue, we review defendant's claim of instructional error for plain error affecting his substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Thus, we will affirm unless an obvious error occurred that either altered the outcome of the proceedings or severely undermined the propriety of the proceedings. *Id*. Jury instructions are reviewed de novo and examined as a whole; "even if there are some imperfections, there is

no basis for reversal if the instructions adequately protected the defendant's rights by fairly presenting to the jury the issues to be tried." *People v Martin*, 271 Mich App 280, 337-338; 721 NW2d 815 (2006) (quotation omitted).

## B. ANALYSIS

Before trial, defendant and the prosecution both sought to admit evidence under MRE 404(b), pursuant to which evidence of past conduct may be admitted for any purpose other than solely to establish a person's character. See *People v Martzke*, 251 Mich App 282, 289-292; 651 NW2d 490 (2002). The prosecution sought to admit evidence of defendant's suicide attempt immediately following the shooting and "[a]ny rebuttal necessary for specific acts introduced by Defendant under MRE 404(b)." The trial court did not explicitly rule on the prosecution's motion, because defendant stipulated to the admission of his suicide attempt and that the prosecution could rebut any character evidence he introduced on his own behalf. Defendant sought to introduce evidence of a wide assortment of crimes committed by the victim and generally pertaining to her aggressiveness, including drug use, breaking and entering, and assaults. The trial court did not grant defendant's motion in its entirety, but it ruled, in relevant part, that defendant could introduce evidence of a 2012 violent altercation between the victim and defendant.

Several witnesses testified that they knew defendant to be a peaceful and honest person. However, witnesses also testified that defendant had a propensity for a quick temper after drinking and that he often vocally wished for the victim's death and argued with her. The witnesses indicated that such remarks were "stupid comments," out of character for him, and essentially hyperbolic and not intended seriously. Nevertheless, there was some evidence introduced that defendant had been the initial physical aggressor in at least one significant altercation between himself and the victim, albeit after significant provocation, and both he and the victim sustained injuries. Defendant was arrested following the 2012 incident.

Defendant takes issue with the following instructions given by the trial court:

> There has been some evidence that the Defendant attempted suicide after the alleged crime. This evidence does not prove guilt. A person may run or hide for innocent reasons, such as panic, mistake, or fear. However, a person may also run or hide because of a consciousness of guilt. You must decide whether the evidence is true, and, if true, whether it shows that the Defendant had a guilty state of mind.

> \* \* \*

> *You have heard evidence that was introduced to show that the Defendant committed a crime for which he is not on trial.* If you believe this evidence, you must be very careful only to consider it for certain purposes. You may only think about whether this evidence tends to show that the Defendant acted purposefully; that is, not by accident or mistake, or because he misjudged the situation. You must not consider this evidence for any other purpose. For example, you must not

decide that it shows that the Defendant is a bad person or that he is likely to commit crimes.

You must not convict the Defendant here because you think he is guilty of other bad acts or other bad conduct. All the evidence must convince you beyond a reasonable doubt that the Defendant committed the alleged crimes, or you must find him not guilty. [Emphasis added.]

As defendant points out, the trial court properly adapted M Crim JI 4.4, regarding flight or concealment after a crime, to incorporate his suicide attempt.

Defendant contends that the error lies in the instruction regarding crimes for which defendant was not on trial. The instruction as given comports with M Crim JI 4.11, regarding evidence of other offenses and imposing limits on the relevance of that evidence. Defendant argues that the trial court erred because it failed to likewise adapt M Crim JI 4.11 to reference his suicide attempt instead of "a crime." He further argues that he was therefore prejudiced because the jury was instructed that he had engaged in criminal conduct, which was highly significant in a case that turned on his credibility.

We reject defendant's contention in his brief on appeal that "there was *no* evidence admitted at the trial that [defendant] had committed any other criminal offenses" (emphasis in original). The jury heard testimony regarding an incident in which defendant and the victim physically assaulted each other and required police intervention. A witness testified that defendant was the first physical aggressor in the incident, so his conduct, as described, was at least potentially criminal.[2] The jury was further informed that defendant was arrested following the incident. We are unable to conclude that the trial court's failure to adapt M Crim JI 4.11 to address the suicide attempt was an inadvertent oversight.

Rather, we conclude that evidence was introduced of prior conduct by defendant that was unrelated to the instant charged offenses, and it posed a risk of inducing the jury to draw improper inferences as to defendant's character. It therefore constituted MRE 404(b) evidence. See *People v Jackson*, 498 Mich 246, 262-263; 869 NW2d 253 (2015). The instruction properly informed the jury that it should not use the 2012 incident to infer defendant's character or convict defendant on the basis of any prior misconduct. The instruction was relevant to evidence actually introduced and had the effect of protecting, rather than undermining, defendant's rights. Furthermore, juries are presumed to follow their instructions. *People v Bruner*, 501 Mich 220, 228; 912 NW2d 514 (2018). To the extent defendant may have been prejudiced by the trial court indicating that some of defendant's conduct was criminal, we are unpersuaded that it was sufficiently powerful to overcome the presumption that the jury followed its limiting instructions. *Id*. at 229-230.

---

[2] A battery is the "intentional, unconsented and harmful or offensive touching of the person of another," and an assault is "an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery"). *People v Cameron*, 291 Mich App 599, 614; 806 NW2d 371 (2011) (quotation marks and citation omitted).

The trial court's instruction regarding evidence of other offenses committed by defendant was not clearly erroneous, and even if it was erroneous, it did not improperly prejudice defendant's rights or affect the outcome of the proceedings.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that his trial counsel was ineffective for failing to object to the jury instruction. We disagree.

## A. STANDARD OF REVIEW

As an initial matter, defendant presents this issue as an alternative, in the event we were to deem any objection to the trial court's instructions waived. There is a strong presumption that trial counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (quotation marks omitted), quoting *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984). A defendant has a "heavy burden" to show otherwise. *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009) (quotation marks and citations omitted). For an ineffective assistance of counsel claim to be successful, a defendant must show: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 US at 688, 694. Trial counsel has no duty to make a meritless or futile objection. *People v Putman*, 309 Mich App 240, 245; 870 NW2d 593 (2015).

## B. ANALYSIS

As discussed above, we conclude that the trial court's instruction was not erroneous and defendant was not prejudiced. Indeed, if the instruction had any effect at all, it would have worked to defendant's benefit. As also discussed above, we find no reason to speculate that the jury would have been unable to follow the instruction to refrain from drawing improper character inferences. Because trial counsel cannot be ineffective for failing to make a meritless instruction, and defendant cannot demonstrate prejudice in any event, we do not find that defendant received ineffective assistance of counsel.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Patrick M. Meter
/s/ Elizabeth L. Gleicher