*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHAEL MARC MORGAN,

        Defendant-Appellant.

UNPUBLISHED
August 8, 2024

No. 367789
Livingston Circuit Court
LC No. 23-000330-AR

Before: MARKEY, P.J., and RIORDAN and CAMERON, JJ.

MARKEY, P.J. (*dissenting*).

I conclude that the district court abused its discretion by denying defendant's motion to admit the toxicology report and associated expert testimony regarding the blood-alcohol content (BAC) of the motorcyclist who was killed in the collision with defendant's vehicle. Accordingly, I would reverse the district court's evidentiary ruling and the circuit court's denial of leave. I therefore respectfully dissent.

## I. BACKGROUND

Defendant was charged with committing a moving violation causing death, MCL 257.601d(1), after a May 13, 2022 accident in which the vehicle he was operating collided with a motorcycle, causing the cyclist's operator, Donald Arnold, to be ejected from the motorcycle. As a result of his injuries, Arnold died 75 minutes later.

Authorities had directed defendant to turn onto a road in the opposite direction from his desired route because they were clearing another accident. After defendant completed his turn, he pulled over and observed behind him that the authorities had now cleared the road and that he could turn around and travel in his intended direction. Arnold was stopped at a traffic signal approximately 770 feet away when defendant thought that he could safely execute a "U-turn" across three lanes and proceed. According to an accident reconstructionist's report, whose author interviewed the driver of a vehicle behind the motorcycle, Arnold could have been traveling at a rate of speed of up to 75 miles per hour in a posted 55 mile-per-hour zone at the time of the accident. The driver behind Arnold indicated that Arnold sped away from the traffic signal "like a bat," accelerating "heavily" when the light changed. That driver further reported seeing the

motorcycle move from "just left of centre [sic] to the right about one foot" before it struck the right front end of defendant's turning vehicle. Defendant reported an unexpected strike that caused his vehicle to spin.

A proposed expert for defendant reviewed a report stating that Arnold had a BAC of .059 g/dL (grams per deciliter), as reflected in a postmortem sample, and the expert calculated that Arnold may have been legally impaired at the time of the accident. During a pretrial hearing, the district court ruled that evidence of Arnold's speed was admissible but that evidence regarding his BAC could not be introduced to a jury. Details of the district court's ruling are discussed below. The circuit court denied defendant's appeal, and this Court granted defendant's application for leave.

On appeal to this Court, defendant argues that the district court erred by denying his motion to admit evidence of Arnold's BAC and that the circuit court erred by denying defendant's appeal of the evidentiary ruling. I agree.

## II. STANDARDS OF REVIEW

This Court reviews a trial court's evidentiary decision for an abuse of discretion. *People v Martzke*, 251 Mich App 282, 286; 651 NW2d 490 (2002). A court abuses its discretion when it chooses an outcome that is not within the range of principled outcomes. *People v Orlewicz*, 293 Mich App 96, 100; 809 NW2d 194 (2011). "[D]ecisions regarding the admission of evidence frequently involve preliminary questions of law, e.g., whether a rule of evidence or statute precludes admissibility of the evidence[,]" and "[t]his Court reviews questions of law de novo." *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). "Our review of a circuit court's review of a district court's order is also de novo." *Noll v Ritzer*, 317 Mich App 506, 510; 895 NW2d 192 (2016).

## III. BAC EVIDENCE

MCL 257.601d(1) provides as follows:

A person who commits a moving violation while operating a vehicle upon a highway or other place open to the general public, including, but not limited to, an area designated for the parking of motor vehicles, is guilty of a misdemeanor punishable by imprisonment for not more than 1 year or a fine of not more than $2,000.00, or both, *if the moving violation was the proximate cause of the death of another person*. [Emphasis added.]

Thus, in this case, the prosecution is required to prove that defendant committed a moving violation that was the proximate cause of Arnold's death. At issue in this appeal is whether evidence of Arnold's BAC near the time of the accident is relevant to whether defendant's driving was the proximate cause of Arnold's death, MRE 401 and 402. And if so, whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, MRE 403.

Defendant's accident reconstructionist calculated that Arnold could have reached 75 miles per hour within 400 feet of the intersection, and he opined that the statement of the driver behind

Arnold that the motorcycle was traveling as fast as 75 miles per hour was "valid." The reconstructionist further opined that Arnold would have taken eight to ten seconds to travel from the intersection to the area of the collision and that defendant would have had seven additional seconds to complete his U-turn had Arnold gone no faster than the posted speed limit of 55 miles per hour. At issue is the report of defendant's expert who, as noted earlier, wrote that Arnold had a BAC of .059 in his postmortem sample taken 75 minutes after the accident. The expert opined that if "Arnold was past peak alcohol absorption at the time of the accident, his BAC would have been between a .071 g/dL and .081 g/dL at the time of the crash," which would have compromised his inhibitions, judgment, attention, comprehension, muscle coordination, and reaction time.[1]

## A. CAUSATION

In *People v Schaefer*, 473 Mich 418, 435-438; 703 NW2d 774 (2005), the Michigan Supreme Court engaged in the following insightful discussion regarding causation in criminal cases:

> In criminal jurisprudence, the causation element of an offense is generally comprised of two components: factual cause and proximate cause. The concept of factual causation is relatively straightforward. In determining whether a defendant's conduct is a factual cause of the result, one must ask, "but for" the defendant's conduct, would the result have occurred? If the result would not have occurred absent the defendant's conduct, then factual causation exists.

> The existence of factual causation alone, however, will not support the imposition of criminal liability. Proximate causation must also be established. . . . [P]roximate causation is a "legal colloquialism." It is a legal construct designed to prevent criminal liability from attaching when the result of the defendant's conduct is viewed as too remote or unnatural. Thus, a proximate cause is simply a factual cause of which the law will take cognizance.

---

[1] The prosecutor argues that the "retrograde extrapolation" method defendant's expert used to calculate Arnold's possible BAC at the time of the accident is speculative. But there is no binding authority prohibiting evidence based on this methodology. In *People v Wager*, 460 Mich 118, 124-125; 594 NW2d 487 (1999), the Supreme Court discussed that a jury heard BAC evidence based on an expert's retrograde-extrapolation calculations and that the jurors rejected the analysis in favor of the actual blood test results from two hours after the event. The Court remarked that "[t]o the extent that the passage of time reduces the probative value of the test, the diminution goes to weight, not admissibility, and is for the parties to argue before the finder of fact." *Id.* at 126. In this case, the issue was not raised before the district court. Theoretically, in my view, it would be better addressed through an objection to the reliability of defendant's expert's methodology and the reliability of the science under MRE 702, MCL 600.2955, and *Daubert v Merrell Dow Pharm, Inc*, 509 US 579, 592-593; 113 S Ct 2786; 125 L Ed 2d 469 (1993). Otherwise, the jury should be entrusted with evaluating the calculation of Arnold's BAC 75 minutes before the test for alcohol content was administered. Of course, under the majority's holding, the issue is irrelevant because the jury will not even learn about Arnold's BAC.

For a defendant's conduct to be regarded as a proximate cause, the victim's injury must be a "direct and natural result" of the defendant's actions. In making this determination, it is necessary to examine whether there was an intervening cause that superseded the defendant's conduct such that the causal link between the defendant's conduct and the victim's injury was broken. If an intervening cause did indeed supersede the defendant's act as a legally significant causal factor, then the defendant's conduct will not be deemed a proximate cause of the victim's injury.

The standard by which to gauge whether an intervening cause supersedes, and thus severs the causal link, is generally one of reasonable foreseeability. For example, suppose that a defendant stabs a victim and the victim is then taken to a nearby hospital for treatment. If the physician is negligent in providing medical care to the victim and the victim later dies, the defendant is still considered to have proximately caused the victim's death because it is reasonably foreseeable that negligent medical care might be provided. At the same time, gross negligence or intentional misconduct by a treating physician is not reasonably foreseeable, and would thus break the causal chain between the defendant and the victim.

The linchpin in the superseding cause analysis, therefore, is whether the intervening cause was foreseeable based on an objective standard of reasonableness. If it was reasonably foreseeable, then the defendant's conduct will be considered a proximate cause. If, however, the intervening act by the victim or a third party was not reasonably foreseeable—e.g., gross negligence or intentional misconduct—then generally the causal link is severed and the defendant's conduct is not regarded as a proximate cause of the victim's injury or death.

In criminal law, "gross negligence" is not merely an elevated or enhanced form of ordinary negligence. . . . [I]n criminal jurisprudence, gross negligence means wantonness and disregard of the consequences which may ensue, and indifference to the rights of others that is equivalent to a criminal intent. [Quotation marks and citations omitted.]

In this case, defendant's argument is that Arnold's conduct in speeding on his motorcycle with an elevated BAC constituted an intervening, superseding cause of the collision given that defendant could not have reasonably foreseen such conduct. Defendant contends that a jury should ultimately resolve the issue. The district court admitted evidence of the speed or velocity at which Arnold was operating his motorcycle at the time of the accident, and the prosecutor agreed with that ruling. But the district court excluded evidence of Arnold's BAC after concluding that it was not "probative" because Arnold was not operating his motorcycle in a grossly-negligent manner. The district court further determined that the evidence would be unfairly prejudicial to the

prosecution. The district court opined that it was reasonably foreseeable that there would be oncoming traffic from a nearby intersection while defendant executed his U-turn.[2]

## B. *PEOPLE V FEEZEL*

The district court relied on, and both parties discuss, *People v Feezel*, 486 Mich 184; 783 NW2d 67 (2010). In *Feezel*, our Supreme Court held that evidence of a deceased victim's intoxication was relevant and admissible with respect to the issue of causation. *Id.* at 187-188. Around 2:00 a.m., the victim in *Feezel* was walking in the rain in the middle of the road with his back to oncoming traffic when the defendant, who had been drinking and had THC in his system, fatally struck the victim and fled. The victim had a BAC of "at least 0.268 grams per 100 milliliters of blood." *Id*. at 188-189. A witness testified that she was driving a car on the same road shortly before the accident, that she did not see the victim in the roadway until he was next to her door, and that she would not have been able to avoid striking him if she had been driving in the other lane. *Id*. at 189-190.

The Supreme Court stated that a trial court "must make a threshold determination in cases such as this of whether evidence of the victim's intoxication is relevant to the element of proximate causation," and, if so, whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice under MRE 403. *Feezel*, 486 Mich at 198. The Court ruled:

> First, the materiality requirement of MRE 401 was met because, as explained earlier, the charges at issue required the prosecution to prove an element of causation beyond a reasonable doubt. In addition, under the broad definition of "probative," evidence of the victim's BAC must merely have any tendency to make gross negligence on the part of the victim more or less probable. Depending on the facts of a particular case, there may be instances in which a victim's intoxication is not sufficiently probative, such as when the proofs are insufficient to create a

---

[2] The majority indicates that the district court found that speeding at 20 miles per hour over the speed limit "is a common, foreseeable occurrence on our roadways[.]" The majority then builds its analysis on its conclusion "that the speeding at issue in this case was not grossly negligent." I do not agree with the majority's characterization of the district court's ruling. The district court ruled that evidence that Arnold was speeding is admissible, and it did not rule that speeding could not be considered by the jury as evidence of gross negligence on the issue of causation. Indeed, the only relevant purpose of admitting evidence of speeding is to allow defendant to assail the causation element of the crime. The district court ruled, in a vacuum, that Arnold's elevated BAC did not constitute gross negligence. The district court stated, "I don't see the BAC so high as to be grossly negligent. And if it was substantially higher, it may have a different, may have affected the Court differently." The district court then shifted gears, ruling, "So the speed or the alleged speed, that'll . . . come in . . . ." The prosecution has not even construed the district court's ruling in the manner suggested by the majority. Respectively, I believe that the majority has not only invaded the province of the jury on the issue of whether Arnold's elevated BAC, when considered in conjunction with the alleged speeding, constituted gross negligence, it has also usurped the authority of the district court by effectively ruling *in the first instance* that any evidence of speeding cannot be considered on the issue of gross negligence relative to causation.

-5-

question of fact for the jury about whether the victim was conducting himself or herself in a grossly negligent manner. Generally, the mere fact that a victim was intoxicated at the time a defendant committed a crime is not sufficient to render evidence of the victim's intoxication admissible. While intoxication may explain why a person acted in a particular manner, being intoxicated, by itself, is not conduct amounting to gross negligence. In this case, however, the victim's extreme intoxication was highly probative of the issue of gross negligence, and therefore causation, because the victim's intoxication would have affected his ability to perceive the risks posed by his conduct and diminished his capacity to react to the world around him. Indeed, in this case, the proffered superseding cause was the victim's presence in the middle of the road with his back to traffic at night during a rain storm with a sidewalk nearby. Thus, the proofs were sufficient to create a jury-submissible question about whether the victim was grossly negligent, and the victim's high level of intoxication would have aided the jury in determining whether the victim acted with wantonness and a disregard of the consequences which may ensue. [*Id.* at 198-199 (quotation marks and citations omitted).]

## C. RELEVANCE

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401.[3] "Under this broad definition, evidence is admissible if it is helpful in throwing light on any material point." *People v Aldrich*, 246 Mich App 101, 114; 631 NW2d 67 (2001). See also MRE 402. "The relationship of the elements of the charge, the theories of admissibility, and the defenses asserted governs what is relevant and material." *People v Yost*, 278 Mich App 341, 403; 749 NW2d 753 (2008) (quotation marks and citation omitted).

I conclude that the district court erred to the extent that it ruled that evidence of Arnold's BAC was not relevant and lacked probative value. The evidence that Arnold's BAC was .059 75 minutes after the accident and that it may have been as high as .081 at the time of the crash was relevant to the issue of proximate cause. Importantly, the evidence of Arnold's conduct in speeding away from the intersection cannot be viewed in a vacuum absent consideration of

---

[3] The Michigan Rules of Evidence underwent sweeping stylistic changes by amendment on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10; 512 Mich lxiii (2023). My quotation of MRE 401 pertains to the pre-amendment version of the rule. To the extent that the amended version of MRE 401 will apply to this case because trial will occur after the effective date of the amendment, I conclude that the restructuring of the language of the rule does not alter my analysis. MRE 401 now provides:

> Evidence is relevant if:
>
> (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and
>
> (b) the fact is of consequence in determining the action.

evidence of possible intoxication or some level of impairment due to the consumption of alcohol. Arnold's use of alcohol could certainly have contributed to the act of speeding and limited or diminished his judgment, attention, and reaction time to such a degree that he lost the ability and capacity to avoid the collision by taking evasive action. A reasonable juror could conclude that operating a motorcycle at excessive speed while having an elevated BAC constitutes gross negligence, i.e., an intervening and superseding cause that severed defendant's causal responsibility. The evidence of Arnold's BAC has a tendency to make gross negligence on his part more or less probable.

The district court distinguished the instant case from *Feezel* by noting that *Feezel* involved egregious circumstances with clear intoxication and easily-discernible gross negligence, whereas here, Arnold's BAC was much lower and there was no evidence of "intoxication or poor driving" on Arnold's part before impact. This reasoning ignores the evidence that Arnold may have reached the speed of 75 miles per hour just before the collision and that alcohol may have compromised his inhibitions, judgment, attention, comprehension, muscle coordination, and reaction time. There was evidence that Arnold made a last-second evasive maneuver, swerving one foot to the right before colliding with defendant as he was moving across the lanes. The effects of alcohol could have contributed to Arnold's decision to drive at an excessive speed at which he could not exert enough control over his motorcycle to move even a short distance to avoid defendant's car. Also, as noted above, Arnold's inability to take successful evasive action—regardless of speed—beyond a movement of one foot could be explained by his consumption of alcohol. Although it may have been reasonably foreseeable, as the district court stated, that traffic would travel toward defendant as he executed his turn, a jury must be given the opportunity to determine whether defendant should have reasonably foreseen the approach of a possibly intoxicated or impaired motorcyclist who was exceeding the speed limit by perhaps 20 miles an hour.

A court "may allow the admission of evidence of the victim's intoxication to aid the jury in determining whether the victim's actions were grossly negligent only when the proofs are sufficient to create a question of fact for the jury." *Feezel*, 486 Mich at 202. In this case, even though, as the district court noted, the circumstances were not as extreme as those in *Feezel*, and while it is true that "being intoxicated, by itself, is not conduct amounting to gross negligence," *id.* at 199, evidence of Arnold's BAC, his excessive speed and otherwise aggressive operation of the motorcycle, and the nature of the accident, created a factual question regarding whether Arnold operated the cycle in a grossly-negligent manner. The challenged evidence could lead a reasonable juror to assess "the victim's conduct as demonstrating a wanton disregard of the consequences that may ensue." *Id*. at 202.

Arnold's conduct in consuming alcohol and speeding, along with the evidence that the distance between Arnold and defendant closed rapidly with little and late evasive maneuvering by Arnold, sufficed to create a jury question on the issue of gross negligence. Both the speeding and drinking are relevant to the issue of causation, and there was evidence that Arnold's BAC may have reached criminal-threshold levels. I conclude that the trial court abused its discretion to the extent that it ruled to the contrary.

## D. UNFAIR PREJUDICE

"[A] trial court must determine whether the evidence tends to make the existence of gross negligence more probable or less probable than it would be without the evidence and, if relevant, whether the evidence is inadmissible under the balancing test of MRE 403." *Feezel*, 486 Mich at 202. Relevant evidence may be excluded under MRE 403 if its probative value is substantially outweighed by the danger of unfair prejudice. "All evidence offered by the parties is 'prejudicial' to some extent, but the fear of prejudice does not generally render the evidence inadmissible. It is only when the probative value is substantially outweighed by the danger of unfair prejudice that evidence is excluded." *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). "Unfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).

In this case, the district court did not clearly state whether it excluded the BAC evidence because it was entirely irrelevant or relevant yet unfairly prejudicial as implied by its MRE 403 analysis. The district court emphasized that Arnold's BAC was, at its highest, at the lower end of the range indicating legal impairment, stating a belief that the BAC did not have "a lot to do with" the collision. But, as stated earlier, Arnold's BAC could have compromised his judgments and abilities in the operation of his motorcycle.

In *Feezel*, 486 Mich at 200, our Supreme Court observed that the BAC evidence was not "*substantially* outweighed by the danger of unfair prejudice" because it was "highly probative of the element of proximate causation, which necessarily required the trier of fact to determine whether the victim's own behavior amounted to a superseding cause." Accepting that Arnold's BAC was significantly lower than that of the victim in *Feezel*, the evidence nonetheless demonstrated that alcohol could have influenced Arnold's actions immediately before and leading to the accident. The evidence is important to the jury's determination regarding whether defendant proximately caused the accident, or whether Arnold's conduct amounted to gross negligence, serving as an intervening, superseding cause of his death. The probative value of the evidence is not *substantially* outweighed by the danger of *unfair* prejudice. I conclude that the evidence would not be given undue or preemptive weight by the jury, nor would it be inequitable to the prosecution to allow use of the evidence. Indeed, excluding the evidence would be inequitable to defendant.

## IV. CONCLUSION

For the reasons discussed in this dissenting opinion, I would hold that the district court abused its discretion by excluding evidence of Arnold's BAC. In my view, the decision to admit evidence of excessive speed on the issue of gross negligence relative to causation, while excluding evidence of Arnold's elevated BAC on the matter, was not a reasonable and principled evidentiary ruling. Therefore, I would reverse the circuit court's order denying leave and reverse the order of the district court excluding the BAC evidence. Accordingly, I respectfully dissent.

/s/ Jane E. Markey