*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TYREE JAMAUL CULBERSON,

Defendant-Appellant.

UNPUBLISHED
January 7, 2021

No. 344075
Genesee Circuit Court
LC No. 17-040841-FC

## ON REMAND

Before: TUKEL, P.J., and SAWYER and RIORDAN, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of three counts of first-degree premeditated murder, MCL 750.316(1)(a), first-degree arson, MCL 750.72, possession with intent to deliver less than 50 grams of cocaine, MCL 333.7401(2)(a)(*iv*), possession with intent to deliver methamphetamine, MCL 333.7401(2)(b)(*i*), felon in possession of a firearm, MCL 750.224f, carrying a concealed weapon (CCW), MCL 750.227, and seven counts of possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to serve terms of imprisonment of life without parole for each murder conviction, 462 to 700 months for the arson conviction, 2 to 30 years for each drug conviction, 12 to 90 months each for the felon-in-possession and CCW convictions, and two years for each felony-firearm conviction. Defendant appeals as of right. We affirm.[1]

---

[1] We originally affirmed defendant's convictions in *People v Culberson*, unpublished per curiam opinion of the Court of Appeals, issued December 26, 2019 (Docket No. 344075), aff'd in part and remanded in part ___ Mich ___; 950 NW2d 50 (2020). Our Supreme Court denied defendant's application for leave to appeal for the issues we decided on the merits (see Parts II through VI of this opinion, in which we reiterate in full the merits rulings of our original opinion), but remanded to this Court "for articulation of [our] reasons for finding a lack of merit in the questions presented

# I. FACTS

This case arises from the deaths of Tiffany Loisell (Loisell), Kenneth Curler (Curler), and John Naum (Naum), whose bodies were recovered from a burning house on Woodrow Avenue in Flint on the morning of December 17, 2016. Autopsies revealed that the victims died from gunshot wounds. Prosecution witnesses testified that, before December 17, 2016, defendant was briefly residing at, and selling drugs from, the Flint house, when tensions developed between him and Loisell, who was a renter of the house. In particular, Loisell had recently stolen some money, some drugs, a black gun, and a telephone from defendant. In response, defendant exhibited a persistent brooding anger, which included displaying a pink revolver and saying, just days before the victims' deaths and arson, that he was "just gonna kill somebody."

During a search of the home of defendant's companion, which was conducted while defendant was present, a pink revolver was discovered hidden in the box spring of a bed. Expert testimony linked a spent bullet recovered from the body of one of the victims, and also a spent bullet recovered from the shooting scene, to the pink revolver. An expert in DNA analysis opined that her testing indicated "strong support" that defendant was a contributor to evidence obtained from that gun.

An arson specialist testified that arsonists typically use isopropyl alcohol or fingernail polish remover as effective accelerants that leave no sign of their use after a fire, and that empty bottles for alcohol and nail polish remover were found in the kitchen of the subject house. A fingerprint expert testified that defendant's thumbprint was discovered on the nail polish remover bottle.

On appeal, defendant argues that he was denied a fair trial by the introduction of a graphic autopsy photograph, belatedly revealed fingerprint evidence, and testimony expressing doubts that another suspect was involved in the murder of one of the victims, and also by the trial court's decision to excuse the attorney for one of the victims from testifying with regard to attorney-client communications. Defendant additionally argues that the evidence was insufficient to support his murder and arson convictions. Finding no error, we affirm.

# II. PHOTOGRAPHIC EVIDENCE

Defendant argues that the trial court erred by admitting a photograph that defendant considers "gruesome." We disagree that it was error to admit the photograph.

This Court reviews a trial court's evidentiary decisions for an abuse of discretion. *People v Martzke*, 251 Mich App 282, 286; 651 NW2d 490 (2002); *People v Ho*, 231 Mich App 178, 187; 585 NW2d 357 (1998). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Waterstone*, 296 Mich App 121, 131-132; 818 NW2d 432 (2012). "A trial court also necessarily abuses its discretion when it makes an error of

---

in the defendant's supplemental [Standard 4] brief." *In re Culberson*, ___ Mich ___; 950 NW2d 50 (2020). Consequently, we vacate our original opinion and now articulate our reasons for finding that the issues presented by defendant in his Standard 4 brief lacked merit.

law." *People v Al-Shara*, 311 Mich App 560, 566; 876 NW2d 826 (2015). "[A] trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *People v Cameron*, 291 Mich App 599, 608; 806 NW2d 371 (2011) (quotation marks and citation omitted).

"Generally, all relevant evidence is admissible at trial." *People v Aldrich*, 246 Mich App 101, 114; 631 NW2d 67 (2001). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Martzke*, 251 Mich App at 293 (citation and quotation marks omitted). "Under this broad definition, evidence is admissible if it is helpful in throwing light on any material point." *Aldrich*, 246 Mich App at 114.

Under MRE 403, however, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." "MRE 403 does not prohibit prejudicial evidence; rather, it prohibits evidence that is unfairly prejudicial. In essence, evidence is unfairly prejudicial when there exists a danger that marginally probative evidence might be given undue weight by the jury." *People v Dixon-Bey*, 321 Mich App 490, 513; 909 NW2d 458 (2017). "In reviewing the trial court's decision for an abuse of discretion, the appellate court must view the evidence in the light most favorable to its proponent, giving 'the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value.' " *People v. Head*, 323 Mich. App. 526, 540–41, 917 N.W.2d 752, 761 (2018) (citation omitted). "[T]he draftsmen intended that the trial judge be given very substantial discretion in 'balancing' probative value on the one hand and 'unfair prejudice' on the other, and that the trial judge should not be reversed simply because an appellate court believes it would have decided the matter otherwise." *Id.* (citation omitted).

When addressing the admissibility of photographs, this Court held in *People v Anderson*, 209 Mich App 527, 536; 531 NW2d 780 (1995):

> Photographs are admissible if they are substantially necessary or instructive to show material facts or conditions. Photographs are not inadmissible merely because they may be gruesome and shocking. However, the trial court should exclude those that could lead the jury to abdicate its truth-finding function and convict on passion alone.

Photographs may "also be used to corroborate a witness' testimony" and "[g]ruesomeness alone need not cause exclusion." *People v Mills*, 450 Mich 61, 76; 537 NW2d 909, 917 (1995), mod 450 Mich 1212 (1995). Finally, "[p]hotographs depicting the nature and extent of a victim's injuries may be probative of the defendant's mental state." *Head*, 323 Mich App at 541.

At trial, during the testimony of the forensic pathologist who performed autopsies on the bodies of the three victims, defense counsel objected to introduction of one of the autopsy photographs on the grounds that it was "kind of ghastly" and "pretty much a horror effect." The challenged image depicted the face of Loisell, and the expert wished to use the image to assist him in explaining how that victim was both shot in the head and then exposed to the house fire. The trial court overruled the objection. After the image was admitted into evidence, the expert described it as follows:

So, we've cleaned up her face and you're looking at her face area. And so, you can see around her eyes there's sort of that black and blue color, okay? And then in the left eye, which is toward the top of the screen you can see sort of a red pink area. That's the entrance wound . . . that entered and went through the brain.

In our view, the challenged photograph is neither shocking nor otherwise inherently prejudicial. The photograph was useful to the expert witness and was probative evidence of both the shooter's intent and the victim's exposure to a house fire. Because the photographic evidence of which defendant complains offered a clear depiction of one victim's gunshot wound and surroundings, and also illustrated some of the trauma resulting from exposure to the house fire, it was probative of the nature and results of some of the criminal conduct at issue. Because the evidence reflected the plain realities of the situation, the risk of "*unfair* prejudice" was slight and thus did not "*substantially* outweigh[]" the probative value of the evidence, MRE 403 (emphasis added), particularly after "giving 'the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value.' " *Head*, 323 Mich App at 540-541 (citation omitted).

Defendant also raises the procedural argument that the trial judge erred by deferring to the expert witness's opinion concerning the need for the challenged photograph, thus failing to exercise its own discretion. See *People v Stafford*, 434 Mich 125, 134; 450 NW2d 559 (1990) (holding that a trial court's failure to exercise its discretion, when properly asked to do so, is itself an abuse of discretion). But our reading of the transcript does not compel such a cynical view of how the trial judge responded to the objection. The trial judge weighed both defense counsel's concerns regarding a "ghastly . . . horror effect," and the prosecuting attorney's arguments that under the circumstances, showing that the person depicted suffered the results of arson along with a gunshot wound. The trial judge then stated "[i]f that's what [the forensic pathologist] needs, I'm gonna let him decide." Notwithstanding the trial judge's deferential wording, the record does not suggest that the trial judge eschewed examining the challenged image itself. Rather, the trial judge independently determined that the photograph was admissible and permitted the forensic pathologist to explain why the admission of the photograph would be helpful to the witness in explaining his testimony. However, the record fails to establish that the trial judge permitted the forensic pathologist to determine whether the photograph was *admissible*. Instead, the record establishes that the trial judge deferred to the forensic pathologist's judgment as to whether the photograph was *necessary* for the jury to see, in order to understand the expert's testimony. Accordingly, we take the trial judge's announced deference to the expert as support for the expert's presentation of important information to the jury, rather than as an abdication of the trial judge's responsibility to weigh probative effect against the risk of unfair prejudice. Thus, the trial judge did not err by admitting the photograph into evidence.

III. ATTORNEY-CLIENT CONFIDENTIALITY

Defendant argues that the trial court erred by permitting Curler's attorney to invoke the attorney-client privilege on Curler's behalf and, accordingly, to not testify at trial about an altercation between Curler and Curler's former-wife. We disagree.

This Court reviews a trial court's evidentiary decisions for an abuse of discretion. *Martzke*, 251 Mich App at 286. "Whether the attorney-client privilege applies to a communication is a question of law" subject to review de novo. *Krug v Ingham Co Sheriff's Office*, 264 Mich App

475, 484; 691 NW2d 50 (2004). Constitutional issues are also reviewed de novo. *People v Conat*, 238 Mich App 134, 144; 605 NW2d 49 (1999).

An attorney has a broad general duty not to "reveal a confidence or secret of a client." MRPC 1.6(b)(1). The attorney-client privilege shields an attorney from being compelled to disclose client information in legal proceedings. See MRE 501 ("Privilege is governed by the common law, except as modified by statute or court rule."). This evidentiary privilege inheres in the constitutional rights against self-incrimination[2] and to assistance of counsel.[3] "The attorney-client privilege is one of the oldest recognized privileges for confidential communications. The privilege is intended to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Swidler & Berlin v United States*, 524 US 399, 403; 118 S Ct 2081; 141 L Ed 2d 379 (1998) (quotation marks and citations omitted).

"The scope of the privilege is narrow; it applies only to confidential communications by the client to his attorney, which are made for the purpose of obtaining legal advice." *Krug*, 264 Mich App at 484-485 (quotation marks and citations omitted). "[T]he general rule is that attorney-client privilege continues after death." *Swidler & Berlin*, 524 US at 406.

At trial, one of defense counsel's strategies was to suggest that someone other than defendant killed Loisell, Curler, and Naum. In hopes of showing that a severe state of animosity existed between Curler on one hand, and Curler's former-wife and her intimate companion Bruce Benson (Benson), on the other hand, counsel sought to call an attorney who had represented Curler in an unrelated matter to offer information gleaned from that representation. Specifically, in an e-mail to the Genesee County managing assistant prosecuting attorney less than one month before Curler was killed, Curler's attorney expressed her client's negative views regarding the prosecutor's decision to not charge Curler's former-wife in connection with an episode of domestic violence in which the former-wife allegedly stabbed Curler several times. In that email, counsel claimed that her client had long received serious threats from his former-wife and Benson. Curler's attorney resisted revealing any such information, explaining as follows:

> I received a subpoena to testify in this matter from [defense counsel]. I represented Mr. Curler relative to . . . a child protective proceeding prior to his death. I believe that his privilege about any conversations I had with him, what I did on his behalf, any permission I had to communicate with other attorneys regarding his case, all of those communications I believe the privilege survives his death and he's not able to waive it. I would be disinclined to answer any questions regarding my representation of him, my conversations with him, or even my conversations with third parties relative to that because I don't believe he can waive his privilege.

---

[2] US Const, Ams V & XIV; Const 1963 art 1, § 17.

[3] US Const, Am VI; Const 1963, art 1, § 20.

Defense counsel responded as follows:

> Well, I would agree that with regard to anything Mr. Curler told her, even if she discussed it with the prosecuting attorney, those things would be privileged and the privilege does belong to Mr. Curler who obviously is not here to waive. However, contained within this communication that she sent, there are some things that I believe privilege does not apply to.

After entertaining further arguments, the trial court announced that it was "going to recognize [the attorney-client] privilege and not require her to testify."

Curler's former-wife testified at trial. She stated that she and Curler had two young sons, and that Curler had been mentally and physically abusive and aggressive, but also that Curler had a personal protection order against her. Curler's former-wife also admitted in her testimony that she had stabbed Curler, adding that Curler had received "two non-defensive wounds."[4] Benson also testified. Both flatly denied any involvement in Curler's death.

In this case, defendant points out that information offered to an attorney to relay to a prosecuting authority in hopes of encouraging criminal proceedings is neither obviously confidential in nature nor obviously disclosed to the attorney for the purposes of obtaining legal advice. We believe, however, that despite couching its explanation in terms of the privilege against testifying, the trial court was in fact more generally respecting the broad duty of attorney-client confidentiality, and that the trial court merely stressed the implications of the privilege for trial testimony because that was the point at issue in trial. The trial court properly anticipated that asking Curler's attorney to testify concerning the communications that led to the e-mail sent to the prosecutor's office could easily have touched on strategy concerning litigation over the young sons of Curler and his former-wife, matters which clearly were privileged. Further, that e-mail was a piece of advocacy presumably presenting Curler's account of his former-wife's behavior in a light least favorable to her, which in turn was based on privileged communications between Curler and his former attorney. Under the circumstances presented, the trial court did not abuse its discretion by declining to parse additional communications between Curler and his lawyer, which were only potentially non-privileged, for the purpose of effectuating a waiver of the privilege, particularly in light of the fact that Curler was not present to waive the privilege.

Furthermore, defendant was not prejudiced by the non-admission of the communications between Curler and his previous attorney, because defendant had an opportunity to cross examine Curler's former-wife and Benson at trial. Defense counsel took advantage of that opportunity to ask Curler's former-wife about the violence between herself and Curler, and to ask Benson about his low opinion of Curler. As such, defense counsel was able to present the substance of what he sought to prove, i.e., that due to long-standing animosity and an admitted history of violence, there were two other persons, other than defendant, who might have murdered Curler. Moreover, any testimony by Curler's attorney about what Curler had told her in regards to his former-wife having attacked him would have been inadmissible hearsay. "[H]earsay is an unsworn, out-of-court

---

[4] Curler's former-wife stabbed him 11 times, including twice in the back.

statement that is offered in evidence to prove the truth of the matter asserted." *People v Musser*, 494 Mich 337, 350; 835 NW2d 319 (2013) (citations and quotation marks omitted). The proposed testimony of Curler's attorney regarding Curler's former-wife's assault of him surely would have been offered for the truth of the matter asserted, and as such, was inadmissible hearsay. Defendant, however, argues that these hearsay statements were admissible because their omission would deprive him of due process. But defendant's right to present a defense only extends to relevant and *admissible* evidence. See *People v Hackett*, 421 Mich 338, 354; 365 NW2d 120 (1984). We are unaware of any hearsay exceptions that would have made the testimony of Curler's attorney admissible over an otherwise valid hearsay objection, and defendant failed to make any such arguments on appeal. Thus, any argument that the proposed testimony of Curler's attorney would have fallen within an exception to the hearsay rule and thus would have been admissible is abandoned. See *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001) (holding that "[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims"); *People v Piotrowski*, 211 Mich App 527, 530; 536 NW2d 293 (1995) (holding that "by failing to refer this Court to any authority supporting her position, [the defendant] has effectively abandoned the issue.").

Defendant alternatively argues that, to the extent that the trial court was obliged to recognize the existence of any attorney-client privilege or confidentiality, such privilege or confidentiality should not have been absolute, but instead should have yielded to his need for such information. The United States Supreme Court has acknowledged that sometimes a recognized privilege against disclosure must "give way" where the information at issue "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause . . . ." *Roviaro v United States*, 353 US 53, 60; 77 S Ct 623; 1 L Ed 2d 639 (1957). Nevertheless, it is well-established that "the [attorney-client] privilege, where it exists, is absolute." *Diversified Indus, Inc v. Meredith*, 572 F2d 596, 602 (CA 8 1977). There is no basis for instead holding that the privilege is merely conditional.

## IV. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to convict him of first-degree premeditated murder and first-degree arson. We disagree.

A valid criminal conviction requires proof beyond a reasonable doubt of every element of every crime. *People v Jaffray*, 445 Mich 287, 296; 519 NW2d 108 (1994). A challenge to the sufficiency of the evidence to support a criminal conviction presents a question of law subject to review de novo. *People v Herndon*, 246 Mich App 371, 415; 633 NW2d 376 (2001). When reviewing the sufficiency of evidence in a criminal case, a reviewing court must view the evidence of record in the light most favorable to the prosecution to determine whether a rational trier of fact could find that each element of the crime was proved beyond a reasonable doubt. *Id.*

Defendant concedes, for purposes of this appeal, that the evidence was sufficient to establish that the crimes of murder and arson were committed, but disputes that it was sufficient to prove his identity as the perpetrator. See *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008) (the identity of the offender "is an element in every offense"). Defendant failed to argue that there was insufficient evidence for any of his other convictions. Thus, we will only

address the identity element for defendant's first-degree premeditated murder and first-degree arson convictions.

"Circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of a crime." *People v Jolly*, 442 Mich 458, 466; 502 NW2d 177 (1993). Defendant, however, does not challenge the various pieces of evidence showing his extreme animosity toward one of the victims, tying him to the gun used in the homicides, and linking him to the empty bottle of accelerant found at the scene of the arson. This evidence proved that defendant had a motive and tied him to both the murders and the arson. Rather than discussing this evidence, however, defendant protests that an "abundance of evidence" demonstrated that several drug dealers visited, and sometimes resided at, the address in question during periods up to the time of the instant crimes, and defendant further asserts that "[a]t the time of the trial most of them were unidentified and not investigated by the police." Defendant additionally claims that "[a]t least two of the three victims had life styles that would generate animosity towards them by others." Defendant thus completely ignores the standard of review, which requires that we evaluate the evidence in the light most favorable to the prosecution, and that we not reweigh it; showing that others might have had motives for acting against one or more of the victims does nothing to undermine the evidence supporting defendant's guilt, when viewed under the proper standard.

In suggesting in particular that Benson might have been the perpetrator, defendant protests that Benson relied on the statements of disreputable persons to prove his whereabouts at the time of the crimes, and complains about the limited extent to which Benson was investigated. But just as reasons to suspect others do not themselves constitute valid challenges to the sufficiency of the evidence in connection with defendant, neither does setting forth ways in which further investigation of other suspects might have been attempted. "'Even in a case relying on circumstantial evidence, the prosecution need not negate every reasonable theory consistent with the defendant's innocence, but need merely introduce evidence sufficient to convince a reasonable jury in the face of whatever contradictory evidence the defendant may provide.'" *People v Hardiman*, 466 Mich 417, 423-424; 646 NW2d 158 (2002), quoting *People v Konrad*, 449 Mich 263, 273 n 6; 536 NW2d 517 (1995). As noted, viewing the evidence in the light most favorable to the prosecution means disregarding all indications that someone other than defendant committed the murders and the arson in question. Consequently, only the evidence connecting defendant to the murders and the arson should properly be considered. In light of the evidence of defendant's motive, and his association with items used in the murders and arson, there was more than sufficient evidence for a jury to find, beyond a reasonable doubt, that defendant was guilty of those offenses.

Defendant additionally suggests that the conduct of the police was "peculiar," citing their investigation of a suspect who physically resembled defendant, and the initial failure, then subsequent success, in finding the pink gun. Such protestations, however, relate to how the fact-finder at trial could have determined to evaluate the evidence, but again fail to address the evidence in the light most favorable to the prosecution, the standard by which we are required to evaluate the evidence.

Defendant implies that witnesses picked him out of a live lineup as the result of suggestiveness. But a challenge to identification procedures[5] is different in kind from a challenge to the sufficiency of the evidence, and defendant offered no such challenge below, and included none in his statement of the questions presented on appeal.[6] Thus, we decline to address this issue.[7]

## V. FINGERPRINT EVIDENCE

Defendant argues that the trial court erred by allowing the prosecution to introduce the fingerprint evidence linking defendant to the accelerant container discovered in the kitchen of the house where the arson had taken place, on the ground that the prosecution did not timely disclose such evidence, in violation of the discovery rules. We disagree.

"We review a trial court's decision regarding the appropriate remedy for noncompliance with a discovery order for an abuse of discretion." See *People v Davie (After Remand)*, 225 Mich App 592, 597-598; 571 NW2d 229 (1997).

Whether a trial court abused its discretion regarding the appropriate remedy for a discovery violation requires "a balancing of the interests of the courts, the public, and the parties" and an "inquiry into all the relevant circumstances, including the causes and bona fides of tardy, or total, noncompliance, and a showing by the objecting party of actual prejudice." *Davie (After Remand)*, 225 Mich App at 598 (citations and quotation marks omitted). "Further, the complaining party must show that the violation caused him or her actual prejudice." *People v Greenfield*, 271 Mich App 442, 455-456 n 10; 722 NW2d 254 (2006).

When determining the appropriate remedy, a trial court must account for the fact that barring the admission of evidence is "an extremely severe sanction limited to an egregious case." *People v Burwick*, 450 Mich 281, 294; 537 NW2d 813 (1995) (citation and quotation marks omitted). While the trial court has ample discretionary power in fashioning a remedy for a discovery violation, it should only order a continuance when one is specifically requested by the aggrieved party, *People v Elston*, 462 Mich 751, 764; 614 NW2d 595 (2000), and a "remedy which would put the objecting party in a better position than he would have enjoyed had disclosure been timely made would seem of dubious value, particularly if it does violence to other legitimate interests in the case," *Greenfield*, 271 Mich App at 456 n 10 (citation and quotation marks omitted).

---

[5] See, e.g., *People v Gray,* 457 Mich 107, 115; 577 NW2d 92 (1998); *People v McCray*, 245 Mich App 631, 639; 630 NW2d 633 (2001); *People v Barclay*, 208 Mich App 670, 675; 528 NW2d 842 (1995).

[6] An issue that is not raised within the statement of questions in the brief on appeal is not properly presented for purposes of appellate review. *People v Unger*, 278 Mich App 210, 262; 749 NW2d 272 (2008). See also MCR 7.212(C)(5).

[7] Furthermore, because defendant failed to make any argument that his conviction arose out of improper identification procedures, this argument is abandoned. See *Watson*, 245 Mich App at 587 (holding that "[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims").

The parties do not dispute that the nail polish remover container from which defendant's thumbprint was taken had been in police custody since December 2016; that the pertinent discovery deadline was in October 2017; and that the prosecution showed no intent to use evidence relating to that thumbprint until the trial was in progress. At the start of the eighth day of trial, the prosecuting attorney informed the trial court as follows:

> [L]ast week . . . we realized that we had evidence that had not been sent to the lab and tested. It was a mix-up between the arson evidence and the homicide evidence. We didn't have a property receipt, so when we got the property receipt we realized, actually, I think we saw the evidence before the property receipt, and we realized we didn't have anything done with it. So, we sent it up to the lab last Tuesday . . . . It was a . . . fingernail polish remover bottle and an alcohol bottle that were found at the scene collected by the arson expert.
>
> We sent it to the lab . . . as soon as we realized it hadn't gone to the lab, and . . . they processed it that day for us. It came back with a fingerprint to the defendant on the fingernail polish remover bottle. Wednesday morning first thing, we did notify the Court as well as counsel that we had found that evidence, we had sent it to the lab, and the results of that evidence, and we are moving to have that admitted. . . .

Defense counsel objected, reminding the court that it had set a deadline for discovery and complaining of being "blindsided." Defendant then asked that the new fingerprint evidence be excluded. Defense counsel further argued that the evidence in question was not properly deemed newly discovered, given that it had been available to the prosecution since the beginning of the investigation. In deciding to allow the prosecution to use the challenged evidence, the trial court explained as follows:

> [I]n this case, apparently, these fingernail polish bottles were unknown, frankly, due to the prosecutor's negligence, due to the police negligence. They should've been better organized with how they put their files together, but I don't see it as ambush of the defendant because the People didn't know about it either. It looks to me like each side is on equal position. And because the prosecutor discovered it last Tuesday I think, that has given everyone a week to prepare for this.

In this case, defendant protests that the late presentation of evidence that defendant's thumbprint was found on the nail polish remover bottle "was a devastating surprise to the defense with little or no opportunity to rebut that late evidence," and argues that what happened in this instance constituted a violation of his constitutional rights to due process. Defendant, however, does not explain how he might have rebutted the challenged fingerprint evidence if he had had more time to do so. Indeed, although defense counsel vigorously opposed introduction of the challenged evidence, counsel never accused the prosecution of deliberate delay or otherwise attempting a tactical advantage. Moreover, at no point did counsel request a continuance in order to develop some means of contesting the evidence. See *People v. Jackson*, 498 Mich. 246, 278–80, 869 N.W.2d 253 (2015) (finding failure to comply with MRE 404(b)'s notice requirement harmless, because "while the defendant suffered 'unfair surprise' from the unexpected introduction of this testimony at trial, he was admittedly aware of [the witness's] general version of events

before trial," and "he has not demonstrated how he would have approached trial or presented his defense differently had he known in advance that [the witness] would be permitted to testify as she did."); *Elston*, 462 Mich at 764 (holding that trial courts should not assume that a party wants a continuance unless that part explicitly asks for one). Additionally, defendant has not argued that the prosecution obtained the fingerprint evidence through improper means, nor has he suggested any prejudice to himself, other than the timing of when he was made aware of the fingerprint evidence for potential use at trial. While the prosecution was, as the trial court noted, negligent in its handling of the evidence at the time it was seized, the timing of the ultimate disclosure, a week before trial, did not constitute an "egregious circumstance" requiring the exclusion of the fingerprint evidence. The trial court did not abuse its discretion by admitting the evidence.

## VI. JUROR QUESTION

Defendant argues that the trial court erred, when it posed a question submitted by a juror to a witness, Ryan Miller (Miller), an acquaintance of Curler; the question asked whether Miller believed that Benson killed Curler. We disagree.

At trial, Miller testified that, after the murders, he discussed with a police detective how Curler had been the target of some derogatory statements that Benson posted on an Internet social networking site. The trial court, relaying a juror's question, asked Miller if he believed that Benson had any involvement with Curler's death, and Miller answered, "Absolutely not. Not after a year of going through, no," and added that Benson "didn't get caught with a smoking gun." The parties agree that this question originated with a juror.

The parties additionally agree that defendant failed to object to the question at the trial court level and, therefore, that the issue is unpreserved. MCR 2.513(I) authorizes a court to "permit the jurors to ask questions of witnesses," and directs a court electing to do so to "employ a procedure that ensures that such questions are addressed to the witnesses by the court itself, that inappropriate questions are not asked, and that the parties have an opportunity . . . to object to the question." "[T]he questioning of witnesses by jurors, and the method of submission of such questions, rests in the sound discretion of the trial court." *People v Heard*, 388 Mich 182, 188; 200 NW2d 73 (1972).[8] Unpreserved issues, however, are reviewed for plain error. *People v Cain*, 498 Mich 108, 116; 869 NW2d 829 (2015).

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. It is the defendant rather than the Government who bears the burden

---

[8] *Heard* was decided by this Court before November 1, 1990, and, therefore, has no precedential authority. See MCR 7.215(J)(1). We find *Heard* persuasive regarding the standard of review for preserved challenges to jury questions at trial, particularly in light of MCR 2.513(I), which permits but does not require a trial court to allow jury questions. Thus, MCR 2.513(I) clearly makes such a decision discretionary.

of persuasion with respect to prejudice. Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (quotation marks, citations, and brackets omitted).]

In the instant context, prejudice "requires a showing . . . that the error affected the outcome of the lower court proceedings." *People v Chelmicki*, 305 Mich App 58, 69; 850 NW2d 612 (2014) (quotation marks and citation omitted). Finally, the trial court's interpretation of statutes and court rules is reviewed de novo. *People v Kimble*, 470 Mich 305, 308-309; 684 NW2d 669 (2004).

"[A] witness cannot express an opinion on the defendant's guilt or innocence of the charged offense." *People v Fomby*, 300 Mich App 46, 53; 831 NW2d 887 (2013) (citation and quotation marks omitted). However, Miller did not offer an express opinion about defendant's guilt or innocence, only Benson's. While the question posed to Miller could be taken as asking indirectly about his opinion regarding defendant's guilt, to do so would require a chain of inferences: that either defendant or Benson was guilty; that defendant ruled out Benson; and therefore it was left as an inference, given that defendant was the only other possible perpetrator, that Miller thought defendant guilty. We decline to read the question in such an attenuated fashion. Moreover, even if we did interpret the question in the manner in which defendant suggests, we nevertheless would find that the question was not outcome determinative, in light of the evidence of defendant's connection to the murder weapon and the substance used to carry out the arson.[9]

---

[9] We note that as a general matter, a witness's opinions are not admissible, MRE 701, and a witness may only offer an opinion on an ultimate issue, such as a person's guilt or innocence, if the underlying opinion itself is admissible, MRE 704. Accordingly, while it is settled that "a witness cannot express an opinion on the defendant's guilt or innocence of the charged offense," *Fomby*, 300 Mich App at 53 (citation and quotation marks omitted), it also is the case that a witness may not express an opinion on the guilt or innocence of any other person, either. Thus, a question such as that asked of Miller should not be posed and trial courts should not permit such testimony as regards any person. However, because defendant does not argue on appeal that it was improper for Miller to offer an opinion about any person other than defendant, we do not base our decision on the impropriety of the question. See *Tingley v. Kortz*, 262 Mich App 583, 588, 688 NW2d 291 (2004) ("Ordinarily, we do not address issues not raised below or on appeal, or issues that were not decided by the trial court.). Rather, if the question of whether it was improper for Miller to express an opinion about Benson's guilt or innocence had been properly presented, we would be compelled to find, in accordance with our resolution of other arguments regarding Miller's testimony which defendant did raise, that any error in the admission of Miller's opinion could not have been outcome determinative, given the strength of the evidence against defendant. See MCL 769.26; MRE 103(d).

Defendant further argues that Miller's reference to the lack of a "smoking gun" in connection with Benson constituted an opinion that defendant was guilty, on the ground that defendant was the only suspect linked to the firearm connected with the murders. We already have noted the impropriety of seeking a witness's opinion. Nevertheless, given defendant's connection to the murder weapon and the nail polish remover used to set the fire, any error in the admission of the opinion necessarily was harmless. See MCL 769.26.

## VII. JUDICIAL MISCONDUCT

Defendant argues, in his Standard 4 brief, that the trial judge's conduct at trial was improper. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

"For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Defendant failed to object to the trial judge's conduct at trial. As such, the issue is unpreserved. As discussed earlier, unpreserved issues are reviewed for plain error. See *Cain*, 498 Mich at 116.

### B. ANALYSIS

A criminal defendant is entitled to "a neutral and detached magistrate." *People v Cheeks*, 216 Mich App 470, 480; 549 NW2d 584 (1996) (quotation marks and citation omitted). The test for determining whether a judge's comments pierced the veil of judicial impartiality is whether, "considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015).

#### 1. REFERENCES TO "VICTIMS"

Defendant first cites authority for the proposition that a judge's mention of a "victim" can improperly suggest to the jury that the alleged crime actually took place.

Defendant points out that the trial court spoke of a victim in two instances, both from the first day of trial. The first took place before jury selection, and before the prospective jurors entered the courtroom. The court was expressing concern over the number of spectators present in the gallery. The court then allowed one representative from each of the victims' families to remain in the gallery during trial.

This mention of "victims" is hardly problematic. Defendant, in his Standard 4 brief, does not suggest that this usage indicated actual judicial bias, but rather argues that the court improperly influenced the jury. Because no jurors were present at this mention of "three victims," defendant's citation of this part of the record is unavailing.

Defendant also points out that the court used the word "victim" during jury selection. In particular, the court asked a prospective juror, "you're saying because of the seriousness of the charge you believe someone was killed you're going to decide right now that this man is guilty?"

Then, after some equivocation from the prospective juror, the court asked, "But . . . I thought I heard you say that if something is missing you're still going to vote guilty because you feel bad for the victims?" The prospective juror answered in the affirmative, and the court said "[t]hen I should excuse you."

In asserting generally that it is improper for a court to recognize the existence of a "victim" until someone has been convicted of the offense that created the victim, defendant fails to distinguish between instances in which it is obvious that a crime took place and the only question is who committed the crime, as in this case, as opposed to a case where it is unknown whether a crime was a committed at all. When the issue is whether a crime was committed at all, a court's reference to a "victim" could indeed imply that the court believes that a crime was committed, as there can be no victim absent a crime, and the implication that the court believes that a crime was in fact committed could be harmful to a defendant. No such negative implication arises in a case such as this one, however, when a court makes reference to "victims," as the fact that a crime was committed is conceded and the existence of victims raises no implication that the defendant is guilty.

In this case, the defense never disputed that the three decedents underlying the murder charges were killed by homicide, and thus were crime victims, but instead attempted to implicate others or otherwise cast doubts on defendant's role in the matter. Defendant points to no instance in which the trial court described those decedents as specifically *defendant's* victims, as opposed to merely the undisputed victims of homicides the perpetrator of which remained an open question. For these reasons, the court's single reference to "victims" in the presence of the jurors did not intrude on the jury's role in deciding what was at issue in this case, and therefore was not error.

## 2. IDENTIFICATIONS CONFIRMED FOR THE RECORD

As this Court has noted, the identity of the offender is an element in every offense. *Yost*, 278 Mich App at 356. In this case, several prosecution witnesses identified defendant in court, which the trial court confirmed for the record. In none of these instances was the trial court making its own pronouncements about who had committed an offense. Instead, the court was merely confirming for the record identifications made by testifying witnesses which, to the extent that they were accomplished by such visual means as gestures, or references to how persons appeared or were positioned in court, were readily apparent to the jurors but would not otherwise have appeared in the record. In each instance, the court merely confirmed, in minimal and neutral terms, what took place, in response to the prosecuting attorney's request that the record reflect that the eyewitnesses specified defendant. The court neither told jurors anything that they could not see for themselves, nor suggested that it was offering its own opinion regarding the credibility of the witnesses. And there is no indication that the court's tone or demeanor were improper.

Defendant does not actually assert that any of the prosecution witnesses who the court confirmed had identified him in fact pointed to some other courtroom participant, or might reasonably have been thought to have done so. But, had there been any question of whom a witness had identified, defense counsel had every opportunity to pose objections or insist on clarification.

Defendant cites authority for the proposition that the identity of a criminal perpetrator presents a question for the jury to decide, which is certainly correct, see, e.g., *id*. (noting that

identity is an element of every offense), but none for the proposition that when a witness identifies a person in court, the court is intruding on the jury's factfinding mission if it states for the record the name of the person thus specified. As if to acknowledge the lack of caselaw supporting his argument, defendant exhorts, "No matter how common the practice is of [the] prosecutor's enlisting the judge to confirm an in-court identification, it should cease here and now." We disagree. By confirming for the record what occurs with nonverbal actions in a courtroom, such as an in-court identification, not only does the court thus ensure that the transcript will reflect the identification, it also offers the parties an opportunity to raise objections, or otherwise express doubts, if there is any question concerning whom the witness identified.

In this case, as noted, the defense fully, if tacitly, acquiesced in the several instances when the trial court confirmed for the record that a prosecution witness had identified defendant in court. Thus, defendant has not established any error at all, let alone plain error, as to this issue.

### 3. PERTINENT JURY INSTRUCTIONS

To whatever extent the jury might have taken the trial court's reference to a "victim," or its confirmations of witnesses' courtroom identifications of defendant as indications that the court believed defendant guilty, any such implication should have been dispelled by the court's instructions to the jury that defendant was presumed innocent; that the jury was to decide the facts solely on the basis of the evidence; and for the jury to consider the court's statements neither as evidence nor as demonstrating an opinion regarding defendant's guilt. "Jurors are presumed to follow instructions, and instructions are presumed to cure most errors." *People v Petri*, 279 Mich App 407, 414; 760 NW2d 882 (2008). Thus, any potential judicial misconduct was cured by the jury instructions.

### VIII. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues, in his Standard 4 brief, that his trial counsel was ineffective for failing to properly interview witnesses before trial. We disagree.

### A. STANDARD OF REVIEW

Defendant did not move for *Ginther*[10] hearing below to determine whether his trial counsel was ineffective. Regardless of whether a claim of ineffective assistance is properly preserved, if the trial court did not hold a *Ginther* hearing, "our review is limited to the facts on the record." *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000). "A claim of ineffective assistance of counsel is a mixed question of law and fact. A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *Petri*, 279 Mich App at 410.

---

[10] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973). No *Ginther* hearing was held in this case.

## B. ANALYSIS

A "defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

> Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. To establish an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. [*People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012) (citations omitted).]

The "reasonable probability" standard can be satisfied by less than a preponderance of the evidence. *People v Trakhtenberg*, 493 Mich 38, 56; 826 NW2d 136 (2012).

Defendant argues, in only general terms, that defense counsel was ineffective for having failed to interview any prosecution witnesses. But defendant fails to specify any witnesses the cross-examination of whom was not effective, or how any instance of cross-examination might have been more effective had defense counsel taken a different approach to trial preparation. Defendant does, however, cite, and append to his Standard 4 brief as Exhibit A, a reproduction of an e-mail from trial counsel to appellate counsel stating that the former did indeed decline to interview prosecution witnesses.

The prosecution, in turn, points out that the e-mail on which defendant relies, while confirming that defense counsel decided against interviewing prosecution witnesses, nonetheless also provides a sound explanation for taking that approach:

> Yes, it is true that the Court did NOT appoint a private investigator to assist me in investigating the case. And no, I did not personally interview any of the prosecution's witnesses. Instead I crafted my cross examination of each witness based on information that my client personally gave me regarding each witness as well as their recorded and transcribed prior testimony at the Preliminary Exam and their recorded and transcribed statements given to police during their investigative process prior to the Exam.

Defense counsel's explanation, which apparently satisfied appellate counsel enough to not raise an ineffective assistance of counsel claim on appeal, illustrates the principle that "the failure to interview witnesses does not itself establish inadequate preparation." *People v Caballero*, 184 Mich App 636, 642; 459 NW2d 80 (1990). Because defendant's own exhibit establishes that defense counsel pursued sound alternatives to conducting interviews in order to obtain information useful for cross-examination, and because defendant fails to identify where or how any of counsel's cross-examinations might have been better, defendant has failed to show that he was denied the effective assistance of counsel.

-16-

## IX. FELON IN POSSESSION

Defendant argues, in his Standard 4 brief, that there was insufficient evidence to convict him of being a felon in possession of a firearm. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

To the extent that defendant here challenges the validity of a stipulation regarding one of the elements of felon in possession, there was no attendant objection below, leaving the issue unpreserved. See *Metamora Water Serv, Inc*, 276 Mich App at 382. As discussed earlier, unpreserved issues are reviewed for plain error. See *Cain*, 498 Mich at 116.

As discussed earlier, when reviewing the sufficiency of evidence in a criminal case, a reviewing court must view the evidence of record in the light most favorable to the prosecution to determine whether a rational trier of fact could find that each element of the crime was proved beyond a reasonable doubt. *Herndon*, 246 Mich App at 415.

### B. ANALYSIS

MCL 750.224f states that "a person convicted of a felony shall not possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm in this state," and also sets forth the conditions for restoration of such rights.

In this case, the existence of a stipulation regarding one of the elements of that offense was first brought to the jury's attention as follows:

> [*The Prosecuting Attorney*]: Your Honor, I believe we do have a stipulated agreement that the defendant has a prior felony and should not have possessed a firearm.
>
> *The Court*: A stipulated agreement means that the lawyers are not going to have to bring in witnesses to try to prove something, they've just agreed that he had a previous felony conviction. . .

The court's final instructions to the jury included the following:

> Now there's a word called stipulation that we use in the courtroom, and when the lawyers agree on a statement or fact these are called stipulated facts. And they did stipulate to certain facts in this case. They looked at you and they said we agree to this. You may regard such stipulated facts as true. But you're not required to do so.

After the latter instruction was given, defense counsel expressed general satisfaction with the instructions as provided to that point.

Stipulations of this sort are routine practice, to which the defense typically agrees in order to avoid having to bring to the jury's attention the specifics of the defendant's earlier felony conviction. In this case, had defense counsel had any qualms about the stipulation that the

-17-

prosecuting attorney put forward and that the trial court described and explained, defense counsel had every opportunity to pose objections or insist on clarification. That counsel instead remained silent demonstrates that counsel preferred to give defendant the benefit of drawing minimal attention to his earlier felony. There is no indication that this course was anything but a reasonable strategic decision.

Defendant alternatively argues that the prosecution failed to present evidence that he had failed to satisfy the statutory conditions for the restoration of his right to possess a firearm. But that provision is an affirmative defense, placing on the person seeking restoration of that right, not the prosecution, the initial burden of producing clear and convincing evidence that he or she has successfully completed all terms of incarceration, conditions of probation or parole, and paid all fines, that resulted from the violation resulting in the prohibition. MCL 28.424(4)(b)(*iii*); MCL 776.20. Accordingly, when charged with being a felon in possession, "the defendant has the burden of producing evidence to establish that his or her right to possess a firearm has been restored," and only "[o]nce the defendant meets this burden of production" does "the prosecution bear[] the burden of persuasion beyond a reasonable doubt" on that element. *People v Perkins*, 473 Mich 626, 628-629; 703 NW2d 448 (2005). In this case, defendant does not suggest that he offered evidence to show that he had restored his gun rights, and we have found no such evidence in the record. Because the defense did not place the matter in issue, "the prosecution was not required to prove the lack of restoration of firearm rights beyond a reasonable doubt." *Id.* at 640.

## X. JUDGMENT OF SENTENCE

Defendant argues, in his Standard 4 brief, that he was prejudiced by errors in his judgment of sentence. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

Defendant did not argue at the trial court level that the judgment of sentence failed to adequately specify the nonparolable nature of defendant's life sentences, or the consecutive nature of his felony-firearm sentences. Thus, the issue is unpreserved. See *Metamora Water Serv, Inc*, 276 Mich App at 382. As discussed earlier, unpreserved issues are reviewed for plain error. See *Cain*, 498 Mich at 116.

### B. ANALYSIS

Defendant would have this Court believe that he is concerned that he might be mistakenly considered for parole in connection with his life sentences for first-degree murder, or that he might be relieved of the (fictional, in light of the life sentences) burden of having to serve his sentences for felony-firearm and those for their underlying felonies consecutively. Because either actual error would work to defendant's advantage, he cannot satisfy the prejudice requirement for relief under the plain-error rule. We decline to address this issue further.

## XI. RESTITUTION

Defendant argues, in his Standard 4 brief, that the trial court erred by failing to address the issue of restitution in his judgment of sentence. The trial court did not plainly err by doing so.

## A. PRESERVATION AND STANDARD OF REVIEW

Defendant did not argue at the trial court level that the judgment of sentence failed to adequately specify the nonparolable nature of defendant's life sentences, or the consecutive nature of his felony-firearm sentences. Thus, the issue is unpreserved. See *Metamora Water Serv, Inc*, 276 Mich App at 382. As discussed earlier, unpreserved issues are reviewed for plain error. See *Cain*, 498 Mich at 116.

## B. ANALYSIS

Not only are defendant's contentions regarding restitution misguided, any such error would be to defendant's favor. Because neither the prosecution nor any survivors of the victims asked the trial court to include restitution as part of the sentencing, the court's silence on the question was not plain error. Furthermore, defendant was not prejudiced by the trial court's decision to not order him to pay any restitution. As such, defendant cannot show that the lack of a restitution order affected his substantial rights or threw the integrity of the proceedings into doubt. See *Carines*, 460 Mich at 763. We decline to address this issue further.

## XII. EVIDENTIARY HEARING

Defendant argues, in his Standard 4 brief, that he is entitled to a *Ginther* hearing to determine whether his trial counsel was ineffective. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

As discussed earlier, defendant did not move for a *Ginther* hearing at the trial court level. Although in his Standard 4 brief defendant asks this Court for a remand for a *Ginther* hearing, he did not file a proper motion in this Court for that purpose under MCR 7.211(C)(1) (permitting a motion to remand where the factual record is insufficient for appellate consideration). See *People v Bass*, 317 Mich App 241, 276 n 12; 893 NW2d 140 (2016) ("As a threshold consideration, to the extent that defendant now requests that this Court remand this matter for a *Ginther* hearing to permit him to substantiate his claims of ineffective assistance, his request for such relief is improperly made; it appears in the text of his Standard 4 brief, not in a proper motion to remand under MCR 7.211(C)(1)."). Thus, the issue is unpreserved. As discussed earlier, unpreserved issues are reviewed for plain error. See *Cain*, 498 Mich at 116.

## B. ANALYSIS

"[W]here . . . a cognizable claim is raised that counsel did not investigate potentially meritorious defenses to the charges, and . . . a substantial possibility appears on the record that potential defenses suggested by defendant were not considered, . . . a full evidentiary hearing on the ineffective assistance of counsel allegation must be conducted." *People v Kimble*, 109 Mich App 659, 663; 311 NW2d 446 (1981). See also *People v Dawkins*, 450 Mich 954; 549 NW2d 560 (1995) (summarily ordering the Court of Appeals to retain jurisdiction and remand the case to the trial court for a *Ginther* hearing).

As discussed earlier in Part VIII, defendant's offer of proof concerning defense counsel's not having interviewed any prosecution witnesses included an email which neatly summarized

reasons supporting counsel's explanation why such action was unnecessary. Accordingly, an evidentiary hearing to elicit the same explanation from defense counsel would not assist this Court in deciding the claim of ineffective assistance. Additionally, as discussed earlier, defendant does not specify which witnesses might have been more effectively cross-examined, or precisely how defense counsel might better have managed such a thing, and so offers no factual predicates that might warrant factual inquiry and determination. For these reasons, defendant fails to show that he is entitled to an evidentiary hearing.

## XIII. CONCLUSION

For the reasons stated in this opinion, defendant's convictions are affirmed.

/s/ Jonathan Tukel
/s/ David H. Sawyer
/s/ Michael J. Riordan